## W. H. CAMPBELL v. STATE.

No. A-2686.    Opinion Filed February 25, 1918.

(170 Pac. 915.)

1.    **INDICTMENT AND INFORMATION—Offense Charged—Assault With Intent to Kill—Conviction of Assault With Dangerous Weapon.** On an information based on section 2336, Rev. Laws 1910, charging the defendant with the offense of assault with intent to kill by shooting, he may properly be convicted of the offense defined by section 2344, of assault with a dangerous weapon with intent to injure any person, although without intent to kill such person, and the court should submit the case to the jury for consideration upon every degree of assault which the evidence in any reasonable view of it suggests.

2.    **TRIAL—Verdict—Sufficiency—Sentence.** A verdict finding the defendant "guilty as charged in the information and submit his punishment to the court" is insufficient as to form and is too vague and uncertain to support a judgment for the highest degree of the offense charged.

3.    **HOMICIDE—Assault With Intent to Kill—Evidence—Instruction.**
In a prosecution for intentionally and wrongfully shooting an-
other with intent to kill, where the evidence shows that the de-
fendant was on his own premises, and the complaining witness
advanced upon him with a Winchester rifle pointed at him, it
was error for the court to instruct the jury on the law of mutual
combat. .

*Appeal from District Court, Cotton County;*
*Cham. Jones, Judge.*

W. H. Campbell was convicted of assault with intent
to kill, and he appeals.  Reversed.

*Elliott F. Hook* and *S. A. Horton,* for plaintiff in error.

*S. P. Freeling,* Atty Gen., and *R. McMillan,* Asst.
Atty Gen., for the State.

DOYLE, P. J.   The plaintiff in error was convicted
upon an information which, omitting formal parts, charges:

"That at and within said county and state on the
18th day of September, 1914, W. H. Campbell, then and
there being, did then and there willfully, unlawfully, and
feloniously make an assault in and upon the person of H.
C. Schnapel with certain deadly and dangerous weapons
likely to produce death, to wit, a certain double-barreled
shotgun and a certain automatic revolver, and did then
and there and therewith shoot metal bullets at, against
and into the body of the said H. C. Schnapel, with the
willful, unlawful, and felonious intent of him, the said
W. H. Campbell, the said H. C. Schnapel to kill and mur-
der, contrary to," etc.

To **reverse** the judgment rendered on the verdict the
defendant appeals.  It appears that the defendant, Camp-
bell, and the prosecuting witness, Schnapel, married half-
sisters, and lived on adjoining farms; that Schnapel had
about 30 acres of cotton land rented from the defendant.
As a witness he testified that he had a cotton crop on his
place, and had about 1,100 pounds, but not enough for a

bale, picked on his own place; that this cotton was in a wagon that he drove over to the Campbell place, where his two sons and another young man were picking cotton to fill out the bale; that Campbell appeared and asked what he was doing, and he told him he wanted to pick about 400 or 500 pounds of cotton to finish out the bale, and Campbell said, "You are trying to steal this cotton," and he said, "No; I only want to finish the bale," and Campbell said, "I would not trust no son of a b——ch," and he told Campbell to get off this cotton patch, and Campbell hit him and got him down; that he got loose from him and started home, and Campbell followed him with a knife and said he had a good mind to cut his throat, and also said, "If you come back any more, I will kill you;" that he went home and got his Winchester rifle and seven cartridges and then went back in a round about way; that Campbell was picking cotton and had a cotton wagon in an adjoining cotton patch; that when he was within a hundred yards of Campbell he heard some one whistle; that then Campbell saw him and started towards his wagon, where he had a shotgun; that he did not believe that Campbell would shoot, so he walked on towards him; that he saw Campbell raise his gun; that he turned quickly, and raised his Winchester, and Campbell jumped behind his wagon and shot at him with an automatic, firing four or five shots; that witness shot at Campbell twice with his Winchester, and backed off into some woods near by, and then Campbell fired another shot at him; that one shot hit his finger and one shot hit a tobacco can in his hip pocket.

The only other witness for the state was C. C. Schnapel, who testified that he was 11 years old, and was with his father in the cotton field on the Campbell place that

afternoon; that the first time he saw the defendant, Campbell, that day, the latter was going towards his wagon, and Mrs. Campbell was with him, and Mr. Campbell had a double-barreled shotgun, and witness' father was going towards them carrying a Winchester; that Mr. Campbell fired the first and second shots, and his father then fired two shots.

As a witness in his own behalf the defendant, Campbell, testified in part as follows:

"My age is 55 years. I had rented him 30 acres of land and he had cotton on the other place. He had picked one bale and hauled it off. About 5 o'clock in the evening I started to where my cotton pickers were, and I saw him mixing the cotton. I walked up to him and said, 'Henry, I don't like to have you mix this cotton;' and he said, 'The hell you say;' and I said, 'Well, I don't;' and he threw off his sack and said, 'You must think that somebody is trying to rob you;' and I said, 'Well, it looks like you are trying to do something;' and he said, 'If you fool with me, I will divide this cotton right in the patch;' and I said, 'No; you won't; you will do as you agreed to do;' and he said, 'I will shoot you, you son of a b——ch,' and we went together. I got him down and hit him one lick, and he said, 'Don't hit me any more, I give up.' I let him up, and he started off and said, 'God damn you, I will get my gun and kill you.' I followed him out a ways and told him to come on back, and I said, 'Henry, let the gun business alone; that is poor business;' and he wheeled around and said, 'God damn you, If I ever catch you down on this farm again I will kill you;' and I said, 'I have got business down here; and I guess I will be down here.' I went to the house and told my wife, and I took my shotgun and revolver and started to where the boys were picking my cotton, and I told them about the trouble. I kept watching where he left his sack. I thought if he came back with a gun he would come that way. My wife came up, and I said, 'Come on let's go to the wagon

and go to the house.' My wife commenced calling for me to run and look out, I was going to be shot. I looked around, and Schnapel was standing sighting at me, and my wife kept hallooing for me to run. I didn't run until he dropped down and pointed at me, and his gun cracked as I was getting behind the wagon. When I jumped behind the wagon, I set my shotgun down with my left hand. Schnapel, he was squatted down sighting when I looked out, and I shot at him with the automatic, and he shot. His bullet went right through the end gate, and then we took another shot apiece. He shot in the wagon spoke, even with the joint of my leg. I thought that would not do, and I grabbed the shotgun and took a shot with it, and then he flagged and ran behind a tree and went to sighting again, and I jumped back out of his sight. I put in another shell, and my wife hallooed that he was running again. I stepped out and watched him go out of sight. I fired two shots with the automatic and another with the shotgun."

Maxey Sewell testified that he was picking cotton for the defendant, with Bill Stuard, and he came up with a gun on his shoulder and said he had trouble with Schnapel, and he started towards the wagon. About that time witness noticed Schnapel coming with his gun, and Mrs. Campbell told her husband, and he ran towards the wagon and Schnapel fired a shot, and after that they both fired two shots apiece. To the same effect was the testimony of the witness Stuard.

Mrs. Campbell testified that she followed her husband to the cotton field and saw Schnapel before he fired a shot, and she begged and pleaded with him not to shoot; that Schnapel dropped on his knee and fired the first shot.

Among others, the court gave the following instructions:

"Gentlemen of the jury, you are instructed that, if you believe from the evidence beyond a reasonable doubt that the defendant was informed and believed at the time he armed himself and returned to the field in question that he would meet the prosecuting witness, Schnapel, in the fiield armed as alleged for the purpose and in the expectation of willingly entering into a deadly combat with arms with the said prosecuting witness, Schnapel, and you further find that he did so enter into such combat, and was in such combat at the time he made the assault as alleged in the information, he would be guilty of assault as charged unless you should further find that at the time of the assault the defendant retreated in good faith and attempted to avoid the combat. (Objected to by defendant, and objection overruled, and exceptions allowed. Cham Jones, Judge.)

"And you are further instructed that, if you believe beyond a reasonable doubt that the defendant did arm himself and proceed to the place where the assault is alleged to have occurred with the intent or for the purpose of entering into a deadly combat voluntarily, then he cannot avail himself of the plea of self-defense. (Objected to by defendant, and objection overruled, and exceptions allowed. Cham Jones, Judge.)

The Attorney General has filed a confession of error, in part as follows:

"In reading the testimony alone a casual reader would wonder how the jury arrived at a verdict of guilty, inasmuch as the testimony for the defense and the admissions of the prosecuting witness, H. C. Schnapel, show that Schnapel himself began the difficulty, and in the last instance by taking a deliberate aim with a Winchester at Campbell. But the jury had all the witnesses before them, and settled this question in favor of the prosecution.

"In looking at the instructions we find what we think is their reason. The learned court below instructed the jury only upon the theory of mutual combat (see *Driggers*

*v. United States*, 1 Okla. Cr. 193, 95 Pac. 612, 120 Am. St. Rep. 823), but did not instruct the jury upon the theory relied on by Campbell in his proof, which should have been done (see *Douglas v. Territory*, 1 Okla. Cr. 584, 98 Pac. 1023.) We do not think that the theory of mutual combat prevails in this case. Campbell might not have been a peaceable man, but he was on his own land, and found Schnapel actually appropriating his cotton, and after they had had a little fight with each other, Schnapel went away saying he would come back and kill him. The defendant had a right to go on his own land anywhere he pleased, and Schnapel had no right to forbid him; but in the instant case he had a wagon and hands at work and cotton being picked at the identical spot he was forbidden to go. This was not a mutual combat on the part of the defendant, but it was the simple assertion of his right to use his own property, to be present when it was done, and to resist an intruder. Had this theory been given to the jury, we have serious doubts as to whether or not they would have returned a verdict as finally brought in. Having failed to give the theory of the defendant to the jury, and the theory that is upheld by all his proof, we think such error was committed as would authorize the reversal of this case."

Upon a careful examination of the record we have reached the conclusion that the judgment in this case should be reversed. In the first place, the information charges the common-law offense of assault with intent to kill and murder. There is no such offense known to our statute. There is a well-recognized distinction between an assault with intent to murder and an assault with intent to kill. In this connection it appears the verdict is as follows:

"We, the jury do, upon our oaths find the defendant, W. H. Campbell, guilty as charged in the information and submit his punishment to the court."

Thus it appears that the verdict is too vague and uncertain to support a judgment for assault with intent to kill.

It also appears that the court submitted only the issue of assault with intent to kill as defined by section 2336, Rev. Laws 1910, but did not instruct the jury upon the offense included in the crime charged, as defined by section 2344, Rev. Laws 1910. Our Criminal Procedure provides that the jury may find the defendant guilty of any offense the commission of which is necessarily included in that with which he is charged in the indictment or information. Section 5923, Rev. Laws 1910. Under the statute the trial court should submit the case to the jury for consideration upon every degree of assault which the evidence in any reasonable view of it suggests, and the instructions must be applicable to the testimony introduced upon the trial.

We are also of the opinion that, for the reasons therein stated, the confession of error is well founded. The defendant being where he had a right to be, on his own premises, at the time the complaining witness advanced upon him with a deadly weapon, the law of mutual combat did not apply.

It follows that the instructions complained of were prejudicial to the substantial rights of the defendant.

For the reasons stated, the judgment of the trial court is reversed.

ARMSTRONG, J., concurs. MATSON, J., not participating.