### HUGH KENNEDY v. STATE.

No. A-3921.   Opinion Filed May 12, 1923.
Rehearing Denied Dec. 4, 1923.
(220 Pac. 61.)

(Syllabus.)

1.  Evidence—Admissibility o f Evidence Although Tending t o Prove Separate Offense. Evidence tending to show design or plan to commit the crime charged is admissible, although it may have tended to show defendant guilty of a separate offense.

2.  Same—Relevancy and Competency of Evidence Tending to Show Design. The kinds of conduct which may evidence design are innumerable, and the relevancy of such evidence and its .competency must vary with the circumstances under which the conduct takes place and be construed according to everyday experiences and common sense. For evidence held admissible to show design to commit the crime charged see body of opinion.

3.  Trial—Defective Verdict—Objection in Trial Court. A verdict, not void, but merely defective, should be objected to in the trial court.

4.  Continuance—Overruling of Motion for Absent Witness not Erroneous. Where defendant had two days in which to procure the attendance of an absent witness, and after such time made no further showing that such delay was insufficient to procure the witness, an order overruling an application for a continuance based on the absence of the witness two days before the case was tried presents no error.

Appeal from District Court, Le Flore County; E. F. Lester, Judge.

Hugh Kennedy was convicted of grand larceny, and he appeals. Affirmed.

Neal & Neal, for plaintiff in error.

George F. Short, Atty. Gen., and N. W. Gore, Asst. Atty. Gen., for the State.

MATSON, P. J.   This is an appeal from the district court of Le Flore county, wherein the plaintiff in error, Hugh Kennedy, hereinafter referred to as defendant, was convicted of the crime of grand larceny, and his punishment fixed at imprisonment in the state reformatory at Granite for a period of one year.

Defendant was convicted of stealing about $27 in money from one Walter Cook, who was at that time (9th day of August, 1919) running a barber shop in the town of Le Flore, Okla.   Cook testified that he left his barber shop some time between 5 and 6 o'clock on the afternoon of that day, after closing the back door and turning the latch on it and closing and locking the front door; that he left the money in the cash drawer in the barber shop and last saw it about 4:30 that day; that after leaving the barber shop he went into the store of the defendant's father, which was also the post office, to see if he had any mail, and then went across the street to a store for the purpose of purchasing a pair of shoes; that he returned to the barber shop about 30 minutes later, unlocked the door, and that he and his father entered the shop; that he noticed that the back door was open about a foot; that he then discovered that the money was missing from the cash drawer; that the defendant had been in the shop that day on numerous occasions, and had left the shop just a short time before witness closed the shop and went

to buy a pair of shoes; that among the bills which were stolen was a $5 bill which 'had been previously torn in two and pasted together with brown paper.

Another witness testified that on the 13th of August, 1919, in the morning, the defendant appeared at his store in the town of Le Flore and presented a $5 bill which had been torn in two and pasted together with brown paper, in payment of a small purchase made by defendant. This $5 bill was afterwards recovered and identified by Cook as one of the bills lost by him from the cash drawer, and was also identified by the cashier of the bank at Le Flore as a bill that he had torn in two and given to a brother of Walter Cook, and this brother also testified that he had turned this particular bill over to Walter Cook, and it was put in the cash drawer at the barber shop on the day of the larceny.

There is also evidence by a couple of witnesses that a few days before the alleged commission of this larceny by the defendant, the defendant was seen in Cook's barber shop in a crouching position, close to the cash drawer from which this particular money was stolen.

Defendant did not deny the possession of the $5 bill with the peculiar marks of identity on it, but explained his possession by testifying that he had received it in payment of a debt due him by another young man of that community, and there is some evidence in the record tending to corroborate the defendant's story of how he became possessed of this particular money. On the other hand, the other young man positively denied having given defendant this particular bill.

Among several assignments of error, the one particularly relied upon for reversal is the alleged error of the trial court in permitting, over objection and exception of defendant,

the evidence of defendant's presence in the barber shop of Cook, on the two occasions above referred to, when Cook was absent and defendant was seen in a crouching position close to the cash drawer from which this particular money was abstracted. It is urged, in the brief of counsel for defendant, that the admission of this evidence was erroneous and prejudicial, in that it tended to prove defendant's guilt of a separate crime, having no connection or bearing upon the issues in this case.

We believe the evidence was admissible on the theory that the defendant designed to burglarize and steal from the barber shop of Cook, and that the larceny for which he was convicted was part of a preconceived plan or design to steal money from the cash drawer of Cook's shop, and that his prior conduct was so closely related in point of time and similar in its circumstances to the circumstances under which this larceny was evidently committed as to be indicative of a design on the part of defendant to commit this larceny. Under such circumstances the fact that it may have also tended to show the defendant guilty of a separate offense was immaterial. We recognize that it is impossible to establish any general or fixed rule which will be definite enough to determine whether evidence of defendant's former acts and conduct will be relevant to prove design in every instance. The kinds of conduct which may evidence design are innumerable, and the relevancy of such evidence and its competency must vary with the circumstances under which the conduct takes place, and be construed according to our everyday experiences and to common sense. We hold that the evidence here complained of was admissible under the circumstances in this case to show a design on the part of the defendant to commit the larceny which was here evidently committed under similar circumstances, and it also

tended to show the defendant's knowledge of the premises and of the location of the place where Cook kept his money.

Further, it is contended that the verdict rendered is so indefinite and uncertain as to be void, and that the trial court was without jurisdiction to sentence the defendant to imprisonment for one year in the state reformatory on the verdict as rendered.

No objection was made to the reception of the verdict. Nor do we find from the record that this assignment of error was ever raised in the trial court. The verdict finds the defendant "guilty of grand larceny as charged in the information," and fixed his punishment at "one year in the reform school." There is no penal institution in this state designated "reform school."

The trial court instructed the jury that if the defendant was found guilty the jury should assess punishment "at imprisonment in the state penitentiary for a term not exceeding five years." The verdict was not void, as it clearly found the defendant "guilty of grand larceny as charged in the information." The defect of incorrectly naming the reformatory was waived by failure to object to the reception of the verdict, and further by failure to move in arrest of judgment. Had defendant objected to this apparent defect in the verdict at the time the same was returned, the verdict, no doubt, would have been reformed, but defendant will not be heard to raise a technical question of this kind for the first time on appeal. Having by his conduct in the trial court waived the defect as to the incorrect name of the place of imprisonment, the verdict was sufficient to authorize the court to pronounce judgment of conviction and to imprison defendant in the state reformatory at Granite, an institution provided for the incarceration of convicted felons.

The assignment that the trial court erred in overruling the motion for a continuance of the cause on account of an absent witness is not meritorious. An alias subpoena was issued for such witness, and the record discloses that it was two days thereafter before the defendant was called upon to introduce any evidence in the case. Why the witness did not appear at this later date is not disclosed by the record; at any rate defendant did not again urge his application for further delay. We think it apparent defendant had ample time to get the witness or else should have made a further showing of his inability to procure his attendance before closing his case.

Judgment affirmed.

DOYLE and BESSEY, JJ., concur.