## CHARLES R. FRAY v. STATE.

No. A-7239.   Opinion Filed Jan. 25, 1930.
Rehearing Denied Feb. 28, 1930.
(285 Pac. 142.)

John L. Ward, L. O. Todd, and Geo. W. Boone, for plaintiff in error.

Edwin Dabney, Atty. Gen., and Smith C. Matson, Asst. Atty. Gen., for the State.

EDWARDS, P. J.   The plaintiff in error, hereinafter called defendant, was convicted in the district court of Tulsa county of the crime of murder, and was sentenced to death.

A brief statement of the facts of the crime are as follows: Defendant, in 1913, was married to Laura Angel. To this marriage, two children were born, a boy, at the time of the tragedy, 14 years of age, and a girl 9 years of age.   This marriage was dissolved by divorce in April, 1927, and the two children were awarded to the custody of

the divorced wife. She resided at Jenks, and defendant resided at Tulsa. Defendant was a habitual user of intoxicating liquor, and much of his trouble with his first wife was due to this. In March, 1928, defendant married a second wife, Lucille. Defendant was of the opinion that his first wife was running a disreputable house in the town of Jenks, and was very much worried about her having custody of the children. On the morning of May 3, 1928, defendant made a batch of home brew, and defendant's wife, Lucille, and a friend went to the town of Jenks to bring defendant's mother to defendant's home, which they did, and also brought a Mrs. Bryan. Late in the afternoon, defendant's wife and her friend took defendant's mother and Mrs. Bryan back to Jenks, the defendant remaining at home. While they were gone, defendant and two other men drank some of the home brew, defendant drinking about three pint bottles.

About 6:30 or 7 p. m., defendant's wife and her friend returned and brought a second young lady friend, a Mrs. Rose Oldham. Mrs. Bryan later left the house, and Mrs. Oldham remained to spend the night. Defendant was first affectionate toward his wife, but later became quarrelsome and abusive. He had an automatic pistol in the house, which his wife obtained, unloaded, and hid from him, and a quarrel developed between them, defendant trying to make his wife tell what she had done with the pistol. In the course of this colloquy, defendant said he was going to Jenks to kill Laura, his former wife. His wife, Lucille, told him he was not going to do so, and she would not get the pistol. Defendant struck his wife several times, and then got a twelve gauge pump shotgun, which was kept in the house, and told his wife he was going to kill her if she did not give him the pistol. She refused; he then said he was going to leave anyhow and

use his shotgun.  After further words, defendant went to the garage, broke the lock, backed the car into the driveway, but his wife went out of the house, and persuaded him not to leave, and he came back into the house.  He was carrying the shotgun, and began a further search for his pistol, and later suggested that the car ought to be put up.  Defendant's wife and her friend went out and put the car up, and hid the pistol outside the house.  When they returned, defendant was still hunting for the pistol, and his wife told him that, unless he behaved himself, she would call an officer about the home brew.  Defendant went into the kitchen, and proceeded to break the bottles, while his wife pretended to dial a number.  He went where his wife was, jerked the telephone loose, and struck her several times, from which she was apparently dazed, but in a few minutes she revived, and told him that it was the last time he was going to whip her; that she was going to leave.  Mrs. Oldham then said she was going to her sister's and defendant's wife said she wanted to go to town.  Defendant told them he would kill them if they attempted to go.  The wife insisted, and he then shot her in the abdomen with the shotgun, and, holding the gun, told Mrs. Oldham to get her coat, that she was going with him.  She asked him not to kill her, and got her coat, and asked him to take her to her sister's.  He made her get in the car, took the shotgun with him, and drove directly to Jenks.  On the way, she asked him to call an ambulance for his wife; he did not do so, but told Mrs. Oldham she was on her way to see him kill Laura.  She asked him not to do so, and he told her he was sorry he killed Lucille, but she should not have made him mad when she knew he was worried about the children.

He drove to his mother's residence, a small hotel in Jenks; went in the back way, taking Mrs. Oldham with

him. He told his mother that he had killed Lucille, and was going to kill Laura and Curtis, the town mashal. He loaded the shotgun, put some shells in his pocket, went to the home of his former wife; finding the door locked, kicked in the window, and shot her in the head, killing her. Then he returned to his mother's place, and said he had shot the top of his first 'wife's head off, but could not find the town marshal. Something was said about him leaving, and he said, if he had enough money, he might. He was asked whether or not he was nervous, and he held up his hand to indicate that he was not. Soon the town marshal and two other officers came to the hotel. Defendant saw them, and concealed himself, and, when they entered, he shot the marshal from the back, and, stepping from his place of concealment, 'was shot by one of the officers. He then said to the officer: "Well, Bill, you've got me." He was taken to the hospital, and there made statements, telling in detail all these circumstances.

The defense was insanity. No hereditary insanity nor physical injury to the brain was shown or attempted. Testifying in his own behalf, defendant related what had occurred up to about 6:30 or 7 o'clock on the evening of the homicide, but stated from that time he did not remember anything until after he had been operated on at the hospital. There is no substantial controversy as to the facts of the killing. He is charged with the murder of Lucille Fray, the second wife.

Several assignments of error are urged as ground for reversal. The first is that the jury was not impaneled in substantial compliance with the provisions of the statute.. The jury was drawn as provided by sections 3517, 2644, Comp. Stat. 1921. But the claim is that there was a violation of section 2645, Comp. Stat. 1921. This section is:

"When the case is called for trial, and before drawing the jury, either party may require the names of all the jurors in the panel to be called, and the court in its discretion may order that an attachment issue against those who are absent; but the court may, in its discretion, wait or not for the return of the attachment."

The district court of Tulsa county has four judges. Section 3083, Comp. Stat. 1921. All or any number of them may hold court at the same time. Section 3089, Comp. Stat. 1921. One hundred and seven jurors of the panel selected for the term were qualified and in attendance upon the entire court composed of four judges. Sixty-one of this number were in attendance upon that division of the court presided over by the trial judge in this case. The others were either serving on juries in other divisions of the court or were in attendance upon some other divisions engaged in impaneling a jury. It is not contended that the sixty-one jurors assigned to this division were improperly selected or were disqualified by reason of the manner of their selection, but that, under section 2645, supra, the names of the persons impaneled to serve as jurors in the trial were not drawn from the entire venire. If this section is mandatory and was so construed, then only one judge could avail himself of the services of a regular venire, and the other judges would have to impanel juries from open or special venires. See Johnson v. State, 16 Okla. Cr. 428, 183 Pac. 926. This certainly is not the meaning of the statute involved. In a county where more than one district court is sitting, the trial judge may impanel a jury from such part of the regular venire as is assigned to the division over which he presides. The purpose of the statute is to prevent a hand-picked jury by arbitrarily selecting a portion of the venire from which to impanel a jury to the exclusion of other members of the venire. It is not claimed that this was done or

attempted to be done in this instance. The right of an accused in the selection of a jury is one of exclusion of incompetent, biased, or prejudiced jurors, and not the inclusion of any particular persons. The excusing of members of the regular panel or a dividing of the panel for the convenience of the court, where more than one judge is sitting, is within the sound discretion of the court. The exercise of such discretion will not be disturbed, unless an abuse is shown. Mathews v. State, 19 Okla. Cr. 153, 198 Pac. 112.

It is next argued that the trial court erred in admitting evidence of the killing of the former wife, Laura, and the other acts of defendant subsequent to the shooting of his wife, Lucille. The soundness of the general rule cannot be questioned that, where a defendant is put on trial for one offense, he is to be convicted, if at all, by the evidence which shows that he is guilty of that offense. Koontz v. State, 10 Okla. Cr. 553, 139 Pac. 842, Ann. Cas. 1916A, 689; Miller v. State, 13 Okla. Cr. 176, 163 Pac. 131, L. R. A. 1917D, 383. But it is equally sound that, where another offense has some logical connection with the offense charged, or tends to show motive, intent, animus, or to cast light upon the offense charged, it is admissible for that purpose. Smith v. State, 3 Okla. Cr. 629, 108 Pac. 418; Dumas v. State, 19 Okla. Cr. 413, 201 Pac. 820; Johnson v. State, 22 Okla. Cr. 332, 211 Pac. 425; Kennedy v. State, 25 Okla. Cr. 306, 220 Pac. 61; Wise v. State, 34 Okla. Cr. 284, 246 Pac. 656; Johnson v. State, 35 Okla. Cr. 212, 249 Pac. 971.

Here under the state's evidence the killing of the wife, Lucille, was directly due to her interference to prevent the express purpose of defendant to kill his former wife, Laura. The subsequent killing of the former wife, Laura, shows the motive and state of mind of defendant in killing

his wife, Lucille, and tends to cast light upon that crime. Under the well-recognized rule, this evidence was admissible for that purpose.

Complaint is further made that the court erred in permitting the state to show in rebuttal acts of lewd conduct on the part of defendant. The defendant in substance had sought to show that the misconduct of his former wife, Laura, and the fact that she had the custody of his children, affected his mind, and led up to his mental condition under which the killing was done. The state, of course, rebutted this. The theory is that a man of good moral character, respectable and respected in his community, having regard for his duties as a husband and the virtue of women, upon learning of the immorality of one near him, may be shocked, or such knowledge may prey upon his mind and culminate in temporary insanity, and that such state of mind would be expected in a man of this character much more readily than in a libertine or man who is immoral. For this reason, rebutting testimony of a defendant's conduct about this time is permitted for the purpose of showing the condition of his mind, and to rebut the inference that the mental shock or strain was sufficiently great to unseat his reason. Coffeen v. State, 22 Okla. Cr. 212, 210 Pac. 288. There was no error in admitting this testimony for this purpose.

It is further contended that the court erred in refusing defendant's requested instructions 2 to 19, inclusive. These requested instructions embrace the law of insanity; the admissibility of evidence as to the acts of defendant subsequent to the killing of the wife, Lucille; the matter of intoxication by defendant at the time of the homicide as making him incapable of forming an intent. Upon the latter point are requested instructions defining and submitting the lesser offense of manslaughter in the first

degree. The requests also cover some other matters. Various of these requests are covered by the general instructions of the court which correctly define and apply the law of insanity. They also properly limit the evidence of the acts of defendant subsequent to the killing of the wife, Lucille. The court properly declined to instruct the law of manslaughter in the first degree. Such instruction is proper under some state of facts. Cheadle v. State, 11 Okla. Cr. 566, 149 Pac. 919, L. R. A. 1915E, 1031. That condition, however, does not obtain here. The killing by defendant was proven. There is nothing to show mitigation, justification, or excuse either in the evidence on the part of the defendant or that by the state, excepting, of course, the defense of insanity. Section 2719, Comp. Stat. 1921. It was not the contention of the defendant that he was intoxicated, nor does the evidence sustain this view. The court, therefore, properly denied this request. Newby v. State, 17 Okla. Cr. 291, 188 Pac. 124. The instructions as a whole correctly and fully cover the law of the case.

Lastly, it is argued at some length that the trial judge was guilty of misconduct, particularly in remarks made in examination of prospective jurors. It seems to us that the examination of jurors was not done with that decorum and courtesy that should have been observed. We find defendant's counsel objecting to the "manner" of the court, the "conduct" of the court, and "interference" by the court, and in some instances interposing questions when counsel for the state was examining, and find the court admonishing counsel not to "butt in." We have scrutinized the record carefully upon this assignment of error, and, while we are of the opinion that the court was too active in questioning the jury, and should have left this more to

counsel, yet we cannot find anything that can reasonably be said to be prejudicial.

Upon a consideration of the whole record, we find no substantial error. The issue of insanity was submitted to the jury, it was a question of fact, and their verdict is against the contention of defendant. We cannot see how the jury could have reached any other conclusion. There appears to be nothing in this case that would justify this court in interfering with the judgment and sentence.

The judgment appealed from is therefore affirmed.

It is further ordered by this court that the warden of the penitentiary proceed to carry into execution the judgment of the district court of Tulsa county in this case, and the 28th day of March, 1930, is fixed as the date for executing the sentence pronounced.

DAVENPORT and CHAPPELL, JJ., concur.