## FAY CHILDS v. STATE.

No. A-9623.  Feb. 8, 1940.
(99 P. 2d 539.)

John T. Levergood, of Shawnee, for plaintiff in error.

Mac Q. Williamson, Atty. Gen., Jess L. Pullen, Asst. Atty. Gen., and Thos. C. Wyatt, Co. Atty., of Shawnee, for the State.

BAREFOOT, J.  The defendant was charged in the district court of Pottawatomie county with the crime of

attempt to kill; was tried, convicted, and sentenced to serve a term of two years in the penitentiary, and has appealed.

It is first contended by defendant that the court erred in giving instructions Nos. 7 and 9, and in refusing to give requested instructions Nos. 1, 2, 3, 4, and 5.

Defendant was charged with attempt to kill under Oklahoma Statutes 1931, § 1873, 21 Okla. St. Ann. § 652, which is as follows:

"Every person who intentionally and wrongfully shoots, shoots at, or attempts to shoot at another, with any kind of firearm, airgun or other means whatever, with intent to kill any person, or who commits any assault and battery upon another by means of any deadly weapon, or by such other means or force as is likely to produce death or in resisting the execution of any legal process is punishable by imprisonment in the penitentiary not exceeding ten years."

As an included offense, the court instructed the jury under the terms of Oklahoma Statutes 1931, § 1870, 21 Okla. St. Ann. § 645, which is the assault with a dangerous weapon statute, and is as follows:

"Every person who, with intent to do bodily harm, and without justifiable or excusable cause commits any assault upon the person of another with any sharp or dangerous weapon, or who, without such cause, shoots or attempts to shoot at another, with any kind of firearm or air gun or other means whatever, with intent to injure any person, although without intent to kill such person or to commit any felony, is punishable by imprisonment in the penitentiary not exceeding five years, or by imprisonment in a county jail not exceeding one year."

The court, after instructing the jury with reference to Oklahoma Statutes 1931, § 1873, 21 Okla. St. Ann.

§ 652, as above quoted, on attempt to kill, then instructed the jury under Oklahoma Statutes 1931, § 1870, 21 Okla. St. Ann. § 645, by giving instruction No. 7, of which complaint is made. It was as follows:

"You are further instructed that should you find the defendant not guilty of the charge of assault with intent to kill, then it will be your duty to consider from the evidence whether or not the defendant is guilty of assault with intent to do bodily injury.

"In this connection you are instructed that the law provides that any person who, with intent to do bodily harm, and without justifiable or excusable cause commits any assault upon the person of another with any sharp or dangerous weapon, or who without such cause shoots or attempts to shoot at another with any kind of firearm or air gun or other means whatever, with intent to injure any person, although without intent to kill such person or to commit any felony, is punishable by imprisonment in the penitentiary for any period of time not to exceed five years, or by imprisonment in the county jail not exceeding one year.

"In this connection you are instructed that if you shall find and believe from the evidence beyond a reasonable doubt that the defendant, Fay Childs, on or about the 12th day of June, 1938, or within three years prior to the filing of the information herein, to wit, the 14th day of September, 1938, in Pottawatomie county, state of Oklahoma, did unlawfully, willfully, intentionally, wrongfully and without justifiable or excusable cause commit an assault upon one Gene Richie with the intent to do him, the said Gene Richie, bodily harm, or with intent to injure him, although without intent to kill the said Gene Richie or to commit any felony, you will find the defendant guilty of assault with a dangerous weapon, and assess his punishment at imprisonment in the penitentiary not exceeding five years, or by imprisonment in the county jail not exceeding one year.

"On the other hand, if, after a careful consideration of all the evidence in the case, you fail to so find, or if

you have a reasonable doubt of the defendant having been proven guilty of an assault with a dangerous weapon, as defined in these instructions, you will find him not guilty.

"In this connection you are further instructed that if you believe beyond a reasonable doubt that the defendant is guilty, but have a doubt as to whether he is guilty of assault with intent to kill or assault with a dangerous weapon you should find him guilty of the lesser offense, to wit, assault with a dangerous weapon."

Counsel for defendant, in very strong terms, criticizes this instruction, claiming that it is too long, confusing, contradictory, and contrary to the law of this state. We do not see the force of this argument. This instruction, in a very fair way, presents the terms of the statute as an included offense. The evidence in the case and the many decisions of this court justified the giving of this instruction as an included offense. Hickman v. State, 32 Okla. Cr. 307, 240 P. 1097; Clark v. State, 6 Okla. Cr. 100, 116 P. 200; Crain v. State, 24 Okla. Cr. 343, 217 P. 888. The first paragraph, it is contended, virtually tells the jury to find the defendant guilty of assault with intent to do bodily harm. We do not so interpret it, and when read in connection with the other paragraphs there is nothing of which defendant can complain.

Defendant next complains that it was the duty of the court to inform the jury of every lesser offense included under said charge, and cites several cases from this court to substantiate this contention. And in this connection says that the trial court erred in failing to give requested instruction No. 2, which was a request for the court to submit the issue of simple assault and battery. Oklahoma Statutes 1931, §§ 1865, 1866, 21 Okla.

St. Ann. §§ 641, 642; Campbell v. State, 14 Okla. Cr. 319, 170 P. 915.

In the first place the cases cited, while announcing the doctrine that the court "should submit the case to the jury for consideration upon every degree of assault," adds the further expression, "which the evidence in any reasonable view of it suggests." By the terms of the information, and the evidence in this case, defendant was charged with attempting to kill the prosecuting witness, by shooting him with a pistol. There were no facts justifying the court in submitting the issue of assault and battery. Defendant's defense was that the gun was fired accidentally. If this was true, he should have been acquitted if acting in a lawful manner, and with reasonable care and due regard for the lives and person of others; but the jury thought otherwise. There was no error in the court refusing to give an instruction on "assault and battery," under the evidence in this case. Jones v. State, 12 Okla. Cr. 255, 154 P. 689; Lane v. State, 65 Okla. Cr. 592, 84 P. 2d 807.

Complaint is also made of the last paragraph of this instruction. This paragraph is favorable to the defendant, informing the jury if they had a reasonable doubt as to whether defendant was guilty of "attempt to kill", or "assault with a dangerous weapon", to give him the benefit of the doubt and find him guilty of the lesser offense. We do not think there was any error in this paragraph. We do not think by this instruction the court told the jury that they "must" find him guilty of one or the other of the two offenses named.

It is next contended that the court erred in giving instruction No. 9, which was as follows:

"You are instructed that it is the theory of the defendant, Fay Childs, that the pistol in this case was

accidentally discharged. You are instructed that an accident is an event which takes place without one's foresight or expectation; an event that proceeds from an unknown cause, or is an unusual effect of a known cause.

"In this connection you are instructed that you may consider the question of whether the pistol herein used was accidentally discharged, to aid you in determining the intent of the defendant as herein mentioned in these instructions.

"In determining these questions you must take these instructions as a whole and not consider any of them separately."

This instruction does not properly present the issue. The court should have informed the jury further that if they believed that the gun was accidentally discharged, they should acquit the defendant if he was acting in a lawful manner, and with reasonable care and due regard for the lives and person of others. However, under the facts, the court evidently had in mind that the defendant having admitted that he had possession of the gun, and that he was therefore committing a misdemeanor, and if the same was accidentally discharged he would not be excused, this view might have justified him in charging the jury upon assault and battery as requested by the defendant. While this instruction cannot be approved as given, it is not every instruction which is error that would cause a reversal of the case. The instructions as a whole must be examined, and the evidence must be reviewed. There cannot be much doubt but that it was the intention of the jury to find the defendant guilty under instruction No. 7. The instructions as a whole gave the jury an opportunity to acquit the defendant if they had believed he was innocent. Under the evidence which will be hereafter stated, we do not think the case should

be reversed by reason of the above instruction. Lane v. State, 65 Okla. Cr. 592, 84 P. 2d 807.

Requested instructions Nos. 1 and 2 have heretofore been discussed. Requested instruction No. 3 was a request to return a verdict of acquittal. This was properly overruled. Requested instruction No. 4 was given in substance by the court.

It is next contended that the court erred in overruling the demurrer to the information, and to the evidence, and that the court erred in receiving, filing and approving the verdict, and in passing sentence on such verdict.

The information was as follows:

"With the unlawful and felonious intent and purpose then and there on the part of him the said Fay Childs, to kill and murder the said Gene Richie."

It is contended that there is no such offense in this . state as to kill and murder. In support of this contention the case of Campbell v. State, 14 Okla. Cr. 319, 170 P. 915, 917, is cited. In this case the court stated:

"In the first place, the information charges the common-law offense of assault with intent to kill and murder. There is no such offense known to our statute."

That case was reversed by reason of confession of error on the part of the Attorney General that the evidence did not justify a conviction, and the instruction by the trial court upon the question of mutual combat, which the court found was not an issue in the case. In the case of Miles v. State, 41 Okla. Cr. 283, 273 P. 284, 285, in an opinion by Judge Doyle, in a case directly in point, said:

"The information alleges that defendant shot Charley Mitchell, with the felonious intent to kill and murder.

The common-law offense of assault with intent to murder is not in our Penal Code. There is a well-recognized distinction between an assault with intent to murder and an assault with intent to kill. However, we think the facts alleged are sufficient to charge the offense of assault with intent to kill by shooting with a revolver; that the words 'and murder' is a mere redundance. It follows that the court did not err in overruling the demurrer."

So in this case the words "to murder" are mere redundance.

The verdict rendered on October 4, 1938, was as follows:

"We, the jury, drawn, impaneled and sworn in the above entitled cause, do upon our oath find the defendant guilty of assault with a dangerous weapon as charged in the information, and assess his punishment at two (2) years in the state penitentiary."

No exception was taken at the time the verdict was rendered, nor was there any reference made to the irregularity of the verdict in the motion to arrest the judgment filed on October 6, 1938. Kennedy v. State, 25 Okla. Cr. 306, 220 P. 61; Love v. State, 12 Okla. Cr. 1, 150 P. 913; Walker v State, 11 Okla. Cr. 339, 127 P. 895; Pruitt v. State, 17 Okla. Cr. 434, 190 P. 894.

In his brief in this court defendant challenges the verdict, and says, that the verdict only finds defendant guilty of a simple assault, which is a misdemeanor, and that the court erred in pronouncing a penitentiary sentence upon such verdict. In support of this contention defendant cites four cases from this court as follows: Campbell v. State, 14 Okla. Cr. 310, 170 P. 915; Feaster v. State, 15 Okla. Cr. 366, 177 P. 124; Sanders v. State, 13 Okla. Cr. 134, 162 P. 676, and Polk v. State, 15 Okla. Cr. 324, 176 P. 538. The Polk Case is the case relied

upon. It may be noted that in the case of Vineyard v. State, 22 Okla. Cr. 76, 209 P. 783, 784, the Polk Case is specifically overruled. The court says:

"Counsel cites and relies upon the case of Polk v. State, 15 Okla. Cr. 324, 176 P. 538, in support of this contention. While there is some language in the Polk Case which tends to support the contention of counsel, it is apparent from the reading of the entire opinion in that case the judgment in that case was reversed because of the indefiniteness of the verdict and the finding of defendant guilty on an issue not submitted to the jury. The first paragraph of the syllabus in the Polk Case is too broad in statement, in conflict with earlier decisions of this court, and is expressly disapproved. * * *

"The information in this case is based upon the second subdivision of section 2336, 21 Okla. St. Ann. § 652, and charges an assault and battery with intent to kill by cutting, stabbing, wounding, and injuring the prosecuting witness with a knife. That an assault and battery necessarily includes an assault needs the citation of no authority. That an intent to kill would necessarily include an intent to do bodily harm is equally apparent. It follows that, on a charge of assault and battery with intent to kill with a deadly weapon, or other means of force likely to produce death, as defined by section 2336, Rev. Laws 1910, one may be convicted of assault with intent to do bodily harm with any sharp or dangerous weapon, as defined by section 2344, Rev. Laws 1910, 21 Okla. St. Ann. § 645. The view here taken is supported by the opinion in the case of Russell v. State, 9 Okla. Cr. 692, 133 P. 475, and also by the opinion in Parks v. State, 14 Okla. Cr. 413, 171 P. 1129, wherein it was held: * * *."

The facts in this case were that the prosecuting witness, Gene Richie, was truant officer for the colored highschool in Shawnee; that some time prior to the filing of the information in this case, and prior to June 12, 1938, the 14 year old brother of defendant had been sent to a reform school for colored boys at Boley, Okla., and

while in said institution had died. Gene Richie was a witness at the trial and defendant formed an opinion that he was in some way connected with the sending of his brother to the institution. On the night of June 12, 1938, Richie, about 9:30 or 10 o'clock was going to his home from a picture show. He was passing the Baptist Church on South Bell street going south. Just as he passed a car that was standing in the street, the defendant walked out in front of him, and he said: "Hello, Fay," and defendant said: "I have been looking for you, I have been waiting for you." The prosecuting witness further testified:

"A. He said, 'I have been looking for some of you guys to get even with some of you God-damned rats.' I said, 'What do you mean, talking to me like that?' He said, 'You killed my brother.' I said, 'What are you talking about, boy? Are you crazy?' I said, 'I had nothing to do with the boy being at Boley, and you know it.' Q. Tell what he said to you. A. That is what he said to me; he told me what he intended to do. Q. What did he say he intended to do? A. He said, 'I have intended to get even with some of you God-damned rats,' he said."

He further testified that defendant said: "God damn you stand steady," and that he threw up his hand and that when he saw what he had in his hand he made a lunge at him and he fired. That he grabbed defendant and they clinched and went to the ground. Both the defendant and prosecuting witness were shot through the leg.

Two other witnesses saw the difficulty. A. B. Culberson, a colored police officer, was standing about 200 or 250 feet south of the scene of the difficulty. He could see the parties by reason of an electric light burning in the street near the church. He heard them talking and

started toward them. He heard the defendant say: "God damn you, you killed my brother. I am going to get even with you. You and that damned little officer was the cause of my brother's death, and I am going to get even with both of you." He further testified: "So Richie began to back off from him, and he said, "Stand still." He further testified:

"Q. Who said, 'Stand still'? A. Childs told Richie to stand still, and I seen him raise his right hand and Richie grabbed him and when Richie grabbed him he grabbed him by the right hand with his left hand and started under him and picked him up, and as he picked him up I heard the shot fired."

After the shot was fired he rushed in and caught the defendant, thinking he was going to shoot again. He struck the defendant with his club, and threw him down and Richie went to the ground with them, and while on the ground Richie, the prosecuting witness, got possession of defendant's gun, and about that time John Williams, a colored man, came up and took hold of Richie, and he held defendant. He testified that he asked defendant, "What is the matter? What is the trouble with you two?" and that defendant said, "That man killed my brother." He took defendant to the police station.

The witness, John Williams, was sitting on his front porch next to the church prior to the difficulty. He was about 75 feet from where the parties met. He corroborated the evidence of the witness Culberson in many details. He saw the defendant near the church for 15 or 20 minutes prior to the approach of Richie. He was walking up and down the street near the church. He heard the conversation between the defendant and Richie when they met. He heard the defendant say: "You caused my brother to be dead and I am going to fix it

with you." He also heard him use the words, "You sons-of-bitches." He heard Richie say, "I haven't had anything to do with this," and, "I am not the cause of your brother being dead, not the cause of him going to Boley." He could not tell whether defendant had anything in his hands or not as he was holding them down by his side. He started toward the parties, and about that time officer Culberson came up, and about that time the gun fired. He saw something in defendant's hand when the prosecuting witness grabbed him. He could not tell what it was. He grabbed hold of Richie, and he had the gun and was going to shoot the defendant, but he held him and prevented him from doing so.

The defendant testified that he was a married man, and that he was down at the Baptist Church on the night of the 12th of June, 1938, to meet a woman who was in the church and take her home; that he was a married man and could not go in the church and sit by her for this reason; that his meeting of prosecuting witness was accidental; that he spoke to him, and told him he killed his brother, and prosecuting witness began walking toward him, and that he put his hand in his pocket and Richie grabbed him; that after he was struck by the witness Culberson, the gun got out of his pocket in some way he could not explain, and was discharged, and shot him through the leg and passed on into prosecuting witness' leg. He further testified that the witness Williams grabbed him and this was the reason the pistol was discharged.

From the above statement it will be seen that the jury was justified in returning a verdict of guilty.

The punishment given by the jury is not excessive. But we cannot approve instruction No. 9, given by the

court. From the facts in the case there is no question as to the guilt of the defendant, but the giving of the instruction above referred to may have caused the jury to become confused and give the defendant more punishment than they would have otherwise. While we do not believe that we would be justified in reversing this case upon the record, as a whole, we are of the opinion the judgment and sentence should be modified from two years in the penitentiary to one year in the penitentiary, and it is so ordered. Horton v. State, 44 Okla. Cr. 318, 280 P. 857; Alvarado v. State, 38 Okla. Cr. 360, 261 P. 983.

DOYLE, P. J., and JONES, J., concur.