## WINSTON ROBINSON et al. v. STATE.

No. A-9136.   Feb. 12, 1937.

(65 Pac. [2d] 212.)

Harley Ivy, for plaintiffs in error.

Mac Q. Williamson, Atty. Gen., and Sam H. Lattimore, Asst. Atty. Gen., for the State.

DAVENPORT, P. J.   The plaintiffs in error were charged by information that on the 14th day of September, 1934, they committed the crime of destroying insured property belonging to Mrs. C. L. Wright, located in Ringling, Jefferson county, Okla., the said building destroyed by the defendants being insured in the Saint Paul Fire Insurance Company; and the information further charges that the building was destroyed by the defendants with the unlawful, willful, wrongful, and felonious intent then and there on the part of them, the said Winston and Herbert Robinson, to destroy the said property and defraud and prejudice the insurance company above named.

As usual in cases of this character, the evidence connecting the defendants with the burning of the house is

circumstantial. The substance of the testimony being as follows:

Mrs. C. L. Wright, the mother-in-law of Winston Robinson, owned a house in the town of Ringling, Jefferson county, Okla; which building was insured in the Saint Paul Fire Insurance Company for $1,250, household furniture for $500. Some time prior to the time the house was burned, Mrs. Wright reduced the insurance from $2,000 to $1,250. The $1,250 policy was on the house at the time of the fire. A few days before the fire a small amount of furniture that belonged to the daughter of Mrs. Wright was moved out of the house to Sulphur, Okla., where the daughter and her husband, Winston Robinson, were living; none of the furniture belonging to Mrs. Wright was moved out; the furniture was hauled in a two-wheeled trailer at a single load. The proof further shows that Mrs. Wright was carrying a mortgage on the said house in the Peoples Building & Loan Association, of Ardmore, at the time of fire; that she had successfully completed a loan with the Home Owners Loan Corporation for a sufficient amount to take up the mortgage and to pay the taxes on the property.

J. B. Oldham, a witness for the state, testified the defendants "are my nephews;" Winston Robinson, one of the defendants, married Mrs. Wright's daughter. Witness further stated that, "prior to the time the house burned, I had a conversation with Winston Robinson, which took place in my store in Sulphur; I don't know that I can relate it like it was, but when Winston spoke to me I thought he was joshing; he had started to Kilgore, Texas, to work in the oil fields and said there was a guy in Ringling told him he could make some quick money, that Mrs. Wright had a house there and wanted it burned for the

insurance money and that he could burn it. Mrs. Wright was living with Winston a year ago; that year she is living with her son. My feeling toward my nephew is friendly."

The defendants' attorney asked the witness if he did not testify in the preliminary trial, and if in his testimony "were you not asked if Winston Robinson stated what property he was talking about the party wanted burned, and you answered, 'I could not remember.'" Witness was asked the following questions and gave the following answers:

"Q. Do you remember now Robinson said it was Mrs. Wright's property? You did not remember then, and now you remember it was Mrs. Wright's property? A. I looked over the statement I gave the Fire Marshal.

"Q. Didn't I ask you this question, Mr. Oldham, this boy was drinking a little and came to you and said he knew where he could make some easy money, or make some money burning something and mentioned the property was Mrs. Wright's and you said no? A. I wasn't acquainted with Mrs. Wright at that time."

Witness further stated:

"The Fire Marshal came out and talked with me; he told me he knew something about this case and that I knew something about it.

"Q. They told you if you didn't make a statement against your own nephew they were going to get you into it too? A. Yes, they told me that.

"Q. Did anybody threaten you? A. Mr. Cook did."

"Mr. Law did not threaten me, he treated me nice. Mr. Cook is a detective."

Laura Stadum testified for the state:

"I live in Ringling, Oklahoma; I know Mrs. C. L. Wright, know where her residence was located in Ringling,

I live just across the street south; her house was burned the night of September 13, 1934; there was some furniture moved out of the house the night before the fire; Mr. Garrison from Sulphur drove the truck; the defendants here assisted him; the night the fire occurred I was over to Mrs. Cox's one block from there in a storm cellar; we came out of the cellar about 30 minutes before the fire and had just gone to bed, the storm had passed over east; when I first saw the fire it was in the top of the house in the southeast corner of the building; my house was close. The things that were moved out of the house were moved across the street east of this place; I was not close enough to examine the things that night. Several days after the fire I was asked to help remove a rug, it had fumes of some kind, either gasoline or coal oil, that was several days after the fire. The things gotten out of the house were stored in Mr. Gerigan's garage. The things taken out of the house before the fire were loaded in a two wheeled trailer. The fire when I discovered it was in the southeast corner in an upstairs room; I don't know how long it had been burning, it was between ten and eleven o'clock at night."

C. A. Jenkins, testifying for the state, stated that:

"On the 13th day of September, 1934, I was living in Sulphur, Oklahoma; I was acquainted with the defendants; they came to the garage about five-thirty and stated they wanted to call Castleberry to get him to drive them to Ringling; that they would give him $6; I told them I would drive them for $6 and five gallon of gas. They paid me $5.25. When we got in the neighborhood of Healdton it was suggested we go by and pick up some girls; we went to the home of Beatrice Thompson and she joined us; we then went to the home of Mattie Gordon, who also joined us; we then drove to another place and got some whisky; at one of the filling stations before we got to Ringling the defendants bought some gasoline and had it put in a can, telling the filling station man they wanted it to take down the road to where there was a boy out of gas; Miss Gordon guaranteed the return of the can.

"It was raining, thundering, and lightning, and we drove into Healdton, and from there after going different places we drove to Ringling. The defendants stopped the car and took the can containing the gasoline and went away with it, being gone 25 or 30 minutes, and when they came back to the car the can was empty. We later returned the girls to their homes and drove back to Sulphur."

Beatrice Thompson and Miss Gordon corroborate in substance the statements of the witness Jenkins as to being at the different homes, and then going from Healdton to Ringling, and the time they stopped in Ringling, and the defendants taking the can with the gasoline in it away from the car and when they came back to the car the can was empty.

The defendants admit that Jenkins drove them from Sulphur to Healdton; admit going to the girls' homes and getting them to join them; admit they were all drinking; they testify they went to one house to get whisky, and while there put the gasoline that was in the can in the tank of the car in which they were riding, and each deny they made a trip to Ringling.

They admit being in Healdton. The defendants say that Jenkins and both the girls were drunk and that one of them had to drive the car.

The testimony on behalf of the state shows they stopped the car in Ringling within one block of the home of Mrs. Wright, which was destroyed by fire that night. The rain clouds had passed to the east before the fire was discovered, and when discovered the testimony shows it was in the upper story in the southeast room of the building.

The defendants have assigned six errors, the first being the court erred in overruling the motion of the plaintiff in error for a new trial. This motion for a new trial em-

braces all the grounds alleged in their petition except that the court erred in overruling their motion for a new trial. The errors will all be considered together.

The defendants in their brief urge that the court committed reversible error in overruling their demurrer to the state's evidence, and motion for a directed verdict. A care-' ful study of the evidence in the case-made shows that it is conflicting and that the jury, if it believed the evidence of the state, was fully justified in returning a verdict of guilty. If it believed the statements of the defendants, then it would have been justified in acquitting the defendants.

The only question discussed by the defendants and urged as a ground for reversal is that the evidence is not sufficient to sustain a conviction of the plaintiffs in error, or either of them. Section 3062, O. S. 1931, is as follows:

"On the trial of an indictment or information, questions of law are to be decided by the court, and the questions of fact are to be decided by the jury; and, although the jury have the power to find a general verdict, which includes questions of law as well as of fact, they are bound, nevertheless, to receive the law which is laid down as such by the court."

In Clingan v. State, 15 Okla. Cr. 483, 178 Pac. 486, the court in the seventh paragraph of the syllabus in part said:

"The jury being the sole judges of facts, where there is sufficient evidence to reasonably support verdict, the Criminal Court of Appeals will not reverse a conviction."

Conflicting issues of facts are for the sole determination of the jury. Adams v. State, 54 Okla. Cr. 363, 21 Pac. (2d) 1075; Tillery v. State, 23 Okla. Cr. 226, 214 Pac. 198; Taylor v. State, 21 Okla. Cr. 351, 207 Pac. 746;

Pickett v. State, 35 Okla. Cr. 60, 248 Pac. 352; Humberd v. State, 56 Okla. Cr. 23, 32 Pac. (2d) 954; Coats v. State, 56 Okla. Cr. 26, 32 Pac. (2d) 955; Kisselburg v. State, 56 Okla. Cr. 46, 33 Pac. (2d) 236; Clemmer v. State, 56 Okla. Cr. 354, 40 Pac. (2d) 37.

The jury having exercised its rights under the facts in this case and the law as given it by the court, and reached the conclusion, though the evidence is conflicting, that there was sufficient evidence to sustain the conviction, this court is not inclined to disturb the verdict.

After a careful examination of the facts and the law as given to the jury by the court, we hold there is no error in the record warranting a reversal. The defendants' rights were properly protected by the court, and the record shows the defendants were given a fair and impartial trial.

The judgment of the trial court is in all things affirmed.

DOYLE and BAREFOOT, JJ., concur.