JOHN COLE v. STATE.

No. A-9143.   Feb. 26, 1937.
(65 Pac. [2d] 547.)

58

Morrill & Snodgrass, for plaintiff in error.

Mac Q. Williamson, Atty. Gen., and Jess L. Pullen, Asst. Atty. Gen., for the State.

DAVENPORT, P. J. The plaintiff in error, for convenience referred to as the defendant, was charged by information with the crime of maintaining a common nuisance; was tried, convicted of maintaining a public nuisance, and sentenced by the court to serve one year in the penitentiary. From the judgment and sentence the defendant has appealed.

Section 11489, O. S. 1931, defines a nuisance as follows:

"A nuisance consists in unlawfully doing an act, or omitting to perform a duty, which act or omission either:

"First. Annoys, injures or endangers the comfort, repose, health or safety of others; or,

"Second. Offends decency; or,

"Third. Unlawfully interferes with, obstructs or tends to obstruct, or renders dangerous for passage, any lake or navigable river, stream, canal or basin, or any public park, square, street or highway; or,

"Fourth. In any way renders other persons insecure in life, or in the use of property."

Section 11490, O. S. 1931, defines a public nuisance, as follows:

"A public nuisance is one which affects at the same

time an entire community or neighborhood, or any considerable number of persons, although the extent of the annoyance or damage inflicted upon the individuals may be unequal."

Section 11491, O. S. 1931, states:

"Every nuisance not included in the definition of the last section is private."

In this case the defendant was by information charged with having committed a common nuisance. The verdict of the jury finds him guilty of maintaining a public nuisance and the court sentenced him upon the verdict returned by the jury, even though he was not charged with a public nuisance.

It is apparent from the effort made by the state in the trial of the case that they intended to and did try the defendant for a public nuisance.

An examination of the record shows that Otto Morris, a deputy sheriff, on or about the 6th day of May, 1935, went to the home of the defendant without a warrant to search the defendant's premises, or to arrest the defendant, and went into his home where he says the defendant and some three or four others were engaged in a game of craps. The deputy sheriff states the parties did not see him until he got inside the house; he further states after he went into the house he arrested the defendant; the sheriff was with the deputy but did not get into the house until after the parties had been disturbed by the deputy sheriff, and knows nothing about what was going on in the house.

An effort was made by the state to show that the defendant by an extrajudicial statement had heretofore admitted that gambling had been going on in his home. The corpus delicti cannot be proven in that way. The

deputy sheriff further stated that some time prior to
May 6, 1935, there were parties at the defendant's home
but he did not see any gambling at that time. Just how
long before this charge was filed against the defendant it
was when the deputy sheriff claims to have been at de-
fendant's home is not shown by the record. So far as
the record shows, it may have been twelve months or two
years. The only evidence as to there being a crap game
going on at the defendant's home positively is on May
6, 1935, when Otto Morris, the deputy sheriff, went into
defendant's home without any authority of law and claims
he saw this defendant shooting craps.

He was a trespasser from the time he entered upon
the premises of the defendant, and when he entered his
home as an officer he was also a trespasser, and any evi-
dence secured by him by the unlawful entry is inadmis-
sible against the defendant. Evidence of one gambling
game is not sufficient to sustain a conviction for a public
nuisance.

We fail to find any statute defining a common nui-
sance, as charged against the defendant. There is no evi-
dence that any of the neighbors, or persons living near
the defendant's home were disturbed in any way whatever.

Several errors have been assigned by the defendant,
but the only ones we deem necessary to consider are:

"1. The verdict is not supported by the law and the
evidence.

"2. The court erred in overruling the demurrer of the
defendant to the evidence offered by the state.

"3. Error of the court in overruling the defendant's
motion for a new trial."

In Bunch v. State, 53 Okla. Cr. 430, 12 Pac. (2d) 704, in the second paragraph of the syllabus, the court in part said:

"Where one is charged with keeping a place in such manner as to constitute a public nuisance, there must be evidence of a positive character that the place was a place of public resort."

It is not contended by the state that the defendant committed any act which annoyed, injured, or endangered the comfort, repose, health, or safety of others, or which offended decency. Nor is it contended by the state that the nuisance charged against the defendant affected the entire community or neighborhood, or any considerable number of persons. In fact, there was no effort made on the part of the state to show injury or disturbance to any one. The state relied for its conviction of the defendant upon the testimony of Otto Morris, who claims he went in the house where a crap game was going on. This testimony might be sufficient if it had been lawfully obtained, which it was not, to maintain a conviction against the parties in the room for shooting craps, but it wholly fails to establish the necessary elements to sustain a conviction against the defendant for maintaining a public nuisance.

This court has often held that where there is any competent testimony to go to the jury it would not disturb the verdict of the jury, but where, as in this case there is no competent testimony to sustain a conviction of the charge for which the defendant was tried, it would reverse the case. Davies v. State, 43 Okla. Cr. 430, 279 Pac. 696.

The testimony is wholly insufficient to sustain the judgment of maintaining a public nuisance, and the de-

murrer of the defendant to the evidence was well taken and should have been sustained.

The case is reversed.

DOYLE and BAREFOOT, JJ., concur.