## BILL McKISSACK v. STATE.

No. A-9133.    March 5, 1937.
(65 Pac. [2d] 1239.)

W. B. Garrett, for plaintiff in error.

Mac Q. Williamson, Atty. Gen., and Sam H. Lattimore, Asst. Atty. Gen., for the State.

DAVENPORT, P. J. The plaintiff in error, for convenience referred to as the defendant, was by information charged with the larceny of one mule; was tried, convicted, and sentenced to serve five years in the state penitentiary. From the judgment and sentence the defendant appeals, and alleges eleven errors committed in the trial of his case. The eleventh assignment being:

"That said court erred in overruling the motion of plaintiff in error for a new trial, and particularly on the ground of newly discovered evidence as set out in plaintiff in error's amended motion for a new trial."

This assignment covers all the other errors assigned by the defendant, and it is not deemed necessary to set them out in full.

The testimony upon which the state relied for a conviction is in substance as follows: G. A. Heckhart stated:

"I live eight miles east and two and one-half miles north of Vici; on April 15, 1935, I lived in Vici and was working for the Stromberg Live Stock Pavilion Company; my duties were to enter the price of all stock purchased and the man who bought it on cards, and send one card to the office and one to the bidder; I was working the morning of April 15th, beginning about 6 o'clock; when

I first saw the defendant Bill McKissack he was leading a mule, walking by the side of the mule as it was being led by Q. A. Mills; he had on a dark hat and sweater, and I think the sweater had a letter B on it; you could call the mule a mouse-colored mule, or brown mare mule; it had larger ears that most mules have; I imagine it weighed about 1,200 pounds, and was about 15½ or 16 hands high; I heard Q. A. Mills tell the defendant he would pay him $160 for the mule; I first saw the defendant about 8 o'clock in the morning, several hours before the regular sale begun. This mule was sold to Q. A. Mills.

"State Exhibit B is what is known as a tail tag; when a mule comes in to the pavilion and is sold, we put a tag on its head and on its tail."

Charles Reese, testifying for the state, stated:

"I work for the Stromberg Commission Company; was working there on the 15th day of April, 1935; I saw the defendant Bill McKissack there about 8:30; he and Mr. Mills came in the offce and reported an alley trade; the defendant was going under the name of W. H. McKinley; they gave me the number of this mule and told me Mr. Mills had bought it in the alley for $160; Mr. Mills said go ahead and pay him, it was all right; I told them as soon as Mr. Stromberg came down.

"State Exhibit A is in the same condition now as when I made it; this is my writing on the exhibit, and shows the purchase of the mule from W. H. McKinley to Q. A. Mills, and the amount of the commission charges, and the total amount paid McKinley. After the sale was reported the defendant wanted to get paid and he had to wait until Mrs. Stromberg came down; when she came I gave her the account sales and she wrote out a check; I went to the door and called to Mr. McKinley and told him Mrs. Stromberg was there, and I heard her ask if that was W. H. McKinley, and she gave the check to him."

Mrs. C. A. Stromberg, who wrote the check and delivered it to the party giving his name at the time as

W. H. McKinley, identified the defendant Bill McKissack as being the man who received the check.

Pauline Trimble, who was employed in the bank at Vici, April 15, 1935, identified the defendant as being the man who presented the check to the bank, giving his name as Bill McKissack, and for whom she issued a cashier's check for $100 and gave him $57.25 in money.

L. A. W. Vincent, cashier and secretary of the Farmers & Merchants Bank, at Arnett, Okla., at whose bank the defendant presented the $100 cashier's check given by the bank of Vici, identified the defendant as being Bill McKissack who presented the cashier's check for $100 at his bank and asked to have it cashed. Vincent further stated he did not cash the check until he had phoned the bank at Vici, and Miss Trimble described the man to whom she had given the $100 cashier's check, and upon that description the Farmers & Merchants Bank cashed the $100 check.

Other witnesses testified to the description of the mule that was stolen, and the proof furnished; that when the mule was bought at Vici the company put a tag on the mule's head and its tail. This mule was sold to another party, and by the time the owner of the mule could trace it it had been sold to a man at Atlanta, Ga. The owner and another man went to Atlanta and identified the mule. The tag on the mule's tail was still attached to the mule's tail and proved to be the tag placed upon it by the Stromberg Company, at Vici, before the company sold it.

The foregoing is the substance of the testimony introduced by the state. No testimony was offered by the defendant.

Defendant in his brief urges that the court erred in permitting certain hearsay testimony with reference to where the mule was sold by the defendant and where it was shipped to Fort Worth, Tex., and from Fort Worth to Atlanta, Ga., and insists that the admission of the testimony complained of which was given by Craig Cooper was sufficient to warrant the court in reversing the case. He also contends that the testimony of Cooper shows that the description of the mule given by him was not the description of the mule given in the information.

On the question of the hearsay testimony, the defendant does not set out the testimony complained of as hearsay, and this court cannot delve into the realms of the mind of the defendant and the record and tell what testimony the defendant has reference to as being hearsay. Some of the testimony given, if separated from the other testimony of Craig Cooper, would in substance amount to hearsay, but as the defendant does not point out what testimony was hearsay, and in view of the fact that the testimony of Craig Cooper, from whose possession the mule was stolen, in detail practically covers that with reference to where the mule was stolen and shipped, and up to the time it was recovered, and the record further shows that some of the witnesses call the mule a mouse-colored or brown mare mule, weighing about 1,200 pounds, and being about 15½ to 16 hands high. All of the testimony of the state was before the jury, and many authorities are cited by the defendant on the question of hearsay testimony. It is not disputed by the state that hearsay testimony is inadmissible and would not be sufficient to sustain a conviction.

This court has repeatedly held that a conviction will not be reversed on the ground of improperly admitted evidence or the exclusion of evidence, unless after an ex-

amination of the entire record it appears there has been a miscarriage of justice or the substantial violation of some constitutional or statutory right of the defendant. Keltner v. State, 52 Okla. Cr. 150, 3 Pac. (2d) 451.

The admission of incompetent evidence is not ground for reversal unless it affirmatively appears from the record that the appellant was injured thereby. Manning v. State, 7 Okla. Cr. 367, 368, 123 Pac. 1029; Sparks v. Territory, 16 Okla. 127, 83 Pac. 712; Littleton v. State, 19 Okla. Cr. 461, 200 Pac. 716; Foreman v. State, 38 Okla. Cr. 50, 259 Pac. 176; Mayse v. State, 38 Okla. Cr. 144, 259 Pac. 277.

There is nothing in the record to show that the court admitted any testimony improperly that biased or prejudiced the minds of the jurors against the defendant.

It is next urged by the defendant that the court erred in refusing to grant him a new trial on the ground of newly discovered evidence, which was unknown to the defendant before the trial of his case, and not ascertained by the defendant until within three days before the date of the trial. The defendant urges that in the trial of the case he learned from the testimony that a man by the name of Q. A. Mills, who purchased the mule for which this defendant is charged with stealing, and that Q. A. Mills' name was not on the information as a witness. He states that since the trial he has located the said Q. A. Mills, who resides at Ames, Okla., and that the said Q. A. Mills, if called as a witness, would have testified this defendant was not the man who sold him the mule, and was not the man representing himself to be W. H. McKinley. The defendant's motion for a new trial on the ground of newly discovered evidence was filed, considered by the court, and overruled.

This court has often held that before newly discovered evidence can be regarded as sufficient to warrant the granting of a new trial, there must be reasonable probability that a different result would have happened if such evidence had been introduced, and said evidence must not be cumulative. If the evidence of Mills had been admitted, he would have testified that the defendant in this case was not one and the same as the man W. H. McKinley from whom he purchased the mule. His testimony would have been in conflict with several other witnesses who had testified and identified McKissack as being the W. H. McKinley who had received the check for the mule, and had received part of the money from the bank, and a cashier's check for the balance, and went to Arnett and cashed the cashier's check and received the money. His testimony would only tend to contradict the unimpeached and uncontradicted testimony of the other witnesses for the state.

In Moseley v. State, 12 Okla. Cr. 402, 157 Pac. 708, 710, the court in part stated:

"This court by numerous decisions has held that the granting of a new trial on the ground of newly discovered evidence is largely within the discretion of the trial court, and its ruling thereon will not be disturbed except for an abuse of this discretion; the presumption being that the discretion was properly exercised. On the record before us there is nothing to indicate that the court committed error in overruling the motion for a new trial."

In Moreland v. State, 58 Okla. Cr. 292, 52 Pac. (2d) 97, 99, this court again stated the rule as follows:

"It is well settled that the granting of a new trial on newly discovered testimony is largely within the discretion of the trial court, and is not to be exercised except when there is reasonable probability that, if the evidence had been introduced, a different result would have

72

been reached, and that courts will not ordinarily grant new trials upon the ground of newly discovered evidence where the evidence sought to be introduced is cumulative or for mere purpose of impeachment. Howey v. State, 9 Okla. Cr. 453, 132 Pac. 499."

Section 3062, O. S. 1931, in part provides:

"On the trial of an indictment or information, questions of law are to be decided by the court, and the questions of fact are to be decided by the jury." Davies v. State, 43 Okla. Cr. 430, 435, 279 Pac. 696; Robinson et al. v. State, 60 Okla. Cr. 443, 65 Pac. (2d) 212, and Cole v. State, 61 Okla. Cr. 57, 65 Pac. (2d) 547.

The jury is the exclusive judge of the weight of the evidence, and if there is a clear conflict in the evidence, or it is such that different inferences can properly be drawn from it, this determination will not be interfered with unless it is clearly against the weight of the evidence, or appears to have been influenced by passion or prejudice. Tillery v. State, 23 Okla. Cr. 226, 214 Pac. 198; Choate v. State, 37 Okla. Cr. 314, 258 Pac. 360; Cole v. State, 18 Okla. Cr. 430, 195 Pac. 901; Pickett v. State, 35 Okla. Cr. 60, 248 Pac. 352; Clemmer v. State, 56 Okla. Cr. 354, 40 Pac. (2d) 37.

The record fails to disclose that the jury was influenced by passion or prejudice. The court did not err in overruling the motion of the defendant for a new trial.

The record has been carefully examined, and the evidence is amply sufficient to sustain a conviction. The defendant was accorded a fair and impartial trial. The court properly advised the jury as to the law applicable to the facts. Finding no error in the record to justify this court in reversing the case, the judgment of the trial court is affirmed.

DOYLE and BAREFOOT, JJ., concur.