## JAMES WARREN v. STATE.

No. A-9147.  May 7, 1937.

(68 Pac. [2d] 434.)

James Warren, pro se.

334

Mac Q. Williamson, Atty. Gen., and Sam H. Lattimore, Asst. Atty. Gen., for the State.

DAVENPORT, P. J. The plaintiff in error for convenience referred to as the defendant was charged in an information filed by the county attorney of Oklahoma county in which it is stated:

"On the first day of June A. D. 1935, in Oklahoma County, State of Oklahoma, James Gordon, whose more full and correct name is to your informant unknown, then and there being, did then and there wilfully, unlawfully and feloniously commit the crime of forgery in the second degree in the manner and form as follows, to wit: That is to say, the said defendant, in the county and state aforesaid, and on the day and year aforesaid, then and there being did then and there wilfully, unlawfully and feloniously issue, utter, exchange and deliver to the Fidelity National Bank, a banking organization, organized and existing under the laws of the United States of America, and authorized to do business in the State of Oklahoma, for the consideration of $833.00, good and lawful money of the United States of America, a forged and counterfeited bond, to wit: $1,000 4½% bond of the City of Omaha, Series 1925, to finance street improvements, No. 66, dated November 1, 1925 and due November 1, 1945, with November 1, 1935, and subsequent coupons attached, with the felonious intent to have the same uttered and passed as true and genuine, and he, the said defendant, knew that said bond was forged and counterfeited, in that said bond was not a true original and valid bond, but is a reprint copy of the true, original and valid bond, and the signatures of James C. Dahlman, Chas. E. Stencha, James P. Hoctor and Geo. W. Marsh, appearing thereon are forgeries, and not the true signatures of the said James C. Dahlman, Chas. E. Stencha, James P. Hoctor and Geo. Marsh, and were not done with their knowledge and consent."

On July 11, 1935, the defendant entered his plea of not guilty to the information filed against him. On Novem-

ber 26, 1935, the state was granted leave to amend the information by changing the date of the offense from May 28, 1935, to June 1, 1935, and on November 27, 29, and 30, 1935, the county attorney was given permission to indorse additional names of witnesses on the information.

On December 2, 1935, a jury was duly and regularly impaneled and the trial proceeded. C. J. Collingsworth, testifying for the state, stated:

"I am forty-seven years of age; I live at 3214 West 18th Street, Oklahoma City, Oklahoma; have lived in Oklahoma City twelve years; I am married; am employed by the U. S. Veterans Administration; have been for four years; I have been in the stock exchange business in Oklahoma City, the first time in the spring of 1933 until May 1934; the name of the company was Collingsworth & Company. I got out of business on my own accord; customers were all paid off; there was no receivership; I had a wire with the stock exchange Beer & Company, New York and New Orleans; what I had was a membership on the New Orleans Cotton Exchange. In 1935 I went in business with James Warren, alias James Gordon. I met Jack Gordon in October, 1934, in Shawnee, Oklahoma. Walter Taylor introduced him to me; I had known Taylor for five years; I went into business with the defendant in March 1935. Had a contract with the defendant whereby he was to finance and operate the business for the use of my membership and for my name, for which I was to receive $100 per month, and if the business made profit I was to receive ten per cent of the profit. I did not have active charge of the business, and I do not know for sure who made the arrangements with the bank for the banking account, either Mr. Gordon or Mr. Morris Head made the banking arrangements; I had not done business with the Fidelity National Bank prior to that time."

The defendant, James Warren, alias Jack Gordon, opened an office in Oklahoma City, and Morris Head was

employed in the office with the title of manager of the Oklahoma City office.

The testimony further shows that on or about May or the first day of June, 1935, Morris Head saw on the desk of the defendant two city of Omaha improvement bonds, state of Nebraska, one of the bonds being the bond upon which this prosecution is based. The defendant later requested Morris Head to take these bonds to the bank and secure information as to the price of the bonds, and what they would sell for on the market. Mr. Head took the bonds to the Fidelity National Bank and secured the information and returned the bonds to the defendant.

The testimony further shows that on the desk of the defendant, at the time he took the bonds to the bank, was a little pile of bonds apparently of the same kind. Defendant stated to Mr. Head that he thought he would make a loan at the bank, and a day or two later he told Mr. Head he made the loan. Mr. Head stated he did not know where the defendant had secured the bonds; later on the defendant stated he had received the bonds as collateral from a man by the name of Constant. The witness stated he saw a ledger on which appeared evidence of an account in the name of G. A. Constant, Seminole, Okla. The ledger sheet was introduced in evidence.

After the office was established in Oklahoma City, the defendant and other persons made a trip to Ada, Okla., and had a conversation with Mr. C. A. Rives, who rented an office in Ada to the defendant, who gave his name to Mr. Rives as Gordon; the office was rented for the firm of Collingsworth & Co. Further testimony was given by Mr. Rives as to a conversation had with the defendant a few days later, Collingsworth and Taylor being present, the defendant discussed with Mr. Rives the making of a

loan and mention was made of Omaha city improvement bonds. A few days later the defendant advised them other arrangements for the loan had been made. He was not sure who did the talking. C. J. Collingsworth stated the defendant was the one who talked to Rives about the loan.

It is further shown by the evidence that the first loan made by Collingsworth & Co. was in the sum of $2,500, dated May 25, 1935, and secured by three city of Omaha improvement bonds, in the sum of $1,000 each, which note was prepared by the bank officials, sent to the defendant's office for his signature, signed by him, returned to the bank, and the loan was completed. The other loans were handled in the same way, and the money was placed to the credit of Collingsworth & Co., and subject to checks drawn by the defendant. The company also made another loan of $2,000 on June 1, 1935, secured by two $1,000 city of Omaha improvement bonds, and 15 shares of J. C. Penney & Co. stock. A third loan was executed to the bank. One of the bonds given as collateral to secure the loan of June 1, 1935, forms the basis of this prosecution.

Chas. E. Stencha, testifying for the state, stated:

"I live in Omaha, Nebraska; I am city comptroller, in charge of the bonds and financial department of the city of Omaha; have been comptroller since 1924; as such comptroller of the city of Omaha, the bonds issued by the city come under my jurisdiction; it is my duty to sign all the bonds issued by the city of Omaha, Nebraska. In 1925 an issue of bonds for Omaha street improvements was issued. State exhibit One is No. 66, one of a series of bonds numbered from one to two hundred, issued at a rate of 4¼%, dated November 1, 1925, due November 1, 1945. That is what it purports to be on the outside. In that series of bonds it would have been my duty to sign bond No. 66; also the mayor, city clerk, and Mr. Marsh, for the state auditor's office. In 1925, James C. Dahlman

was mayor of Omaha; I am acquainted with his signature. The signature on state exhibit One, being bond No. 66, is not Mr. Dahlman's signature. I know the signature of James P. Hoctor; the signature on this bond is not the signature of Mr. Hoctor. I never signed my name to this bond, nor did I authorize anyone to put my name on it. This bond is a forgery. I know the signature of Geo. W. Marsh, auditor of accounts; the signature on state exhibit One, bond No. 66, is not Mr. Marsh's signature.

"The signatures on state exhibit 4, is not the signature of Mr. Dahlman, Mr. Hoctor, my own signature, or the signature of Mr. Marsh; they are all forgeries.

"The signatures on state exhibit 6, including my own signature, are not genuine; they are forgeries. The signatures on exhibits 6, 10, 11, 12 and 13, are not the signatures of the officers of the city of Omaha. They are all forgeries, none of them are genuine."

Witness further stated:

"I have Bond No. 200 with me. I have compared the paper on which the forged bonds are printed. This Bond No. 200, and all the original genuine bonds are steel plate from the same form, same paper. The coupons on this bond in question are on the same kind of paper as the original; the type is different and a different coupon rate."

The officers of the bank testified as to the manner in which the loans were negotiated, and that the defendant in this case signed the names of Collingsworth & Co., by James Gordon, partner, who is the defendant in this case. The state offered proof showing that the defendant was really the main partner in the firm of Collingsworth & Co., and that he was using the Collingsworth name as he had a membership in the New Orleans Cotton Exchange, and that Collingsworth was receiving $100 per month and 10 per cent. of the profits, if any profits were made.

The testimony offered in behalf of the defendant is in substance as follows: Defendant stated at the county at-

torney's office, when asked where he got these bonds, he could not tell exactly but he called up his office and the clerk there was supposed to give him the name; still holding the telephone he took a pen and wrote down on a piece of paper, which he was given, the name of G. A. Comstamp or Constant.

The person whose name the defendant gave could not be located in Seminole, or anywhere in the country. The books of Collingsworth & Co. failed to show when examined by the receiver appointed by the court any such bonds purchased by the company or handled by the company. The defendant stated he got the bonds together with a number of other bonds from the Shawnee office, that he brought the same to the Oklahoma City office without knowing the account to which they belonged. He further stated he laid the bonds on the desk and told Morris Head to put them in the box, and after he checked them Morris Head put them in the box. I asked Head if he needed any funds at the bank and he said no. He threw the bonds in the box and they laid there two or three weeks. The box was a safety deposit box for which the defendant stated he did not have a key. He further stated that after having the bonds two or three weeks he decided to make a loan on the bonds and other collateral.

On cross-examination the defendant denied he stated the bonds came from Constant; admitting he did not know Constant, and stating he got the bonds from O'Donnell; that O'Donnell was manager, cashier, and bookkeeper of the Shawnee office.

The testimony shows that the defendant was in full control of the Oklahoma City office, and that the business was being done in the name of Collingsworth & Co. That he had in his possession ten $1,000 city of Omaha improve-

ment bonds, which are admitted to have been forgeries. The testimony further shows that he used these bonds as collateral in securing loans from the Fidelity National Bank, his employees being used to perfect the transactions.

The testimony shows all the notes given to the bank by Collingsworth & Co. were signed by James Gordon, partner.

The record is voluminous and many other witnesses testified as to different facts about the transaction. We do not believe it would serve any useful purpose to set out the testimony in full. The foregoing testimony, the substance of which is incorporated in this opinion, is sufficient for this court, after carefully examining the law, to arrive at an opinion as to whether or not the defendant was accorded a fair trial under the law and the facts.

In support of his contention that he had not been given a fair trial, and that the case should be reversed, the defendant has assigned 16 errors alleged to have been committed by the trial court. The section of the statute under which the defendant was charged, tried, convicted, and sentenced to a term of four years in the state penitentiary is section 2139, O. S. 1931 (21 Okla. St. Ann. § 1592), which is as follows:

"Every person who, with intent to defraud, utters or publishes as true any forged, altered or counterfeited instrument or any counterfeit gold or silver coin, the forging, altering or counterfeiting of which is hereinbefore declared to be punishable, knowing such instrument or coin to be forged, altered or counterfeited, is guilty of forgery in the second degree."

The defendant in his brief confines his argument to the question that the evidence of the state is insufficient to sustain a conviction. Several pages of his brief are

taken up with the question that there is nothing in the record to show that this defendant committed the alleged crime for which he is charged and insists that there is no testimony tending to say this defendant uttered or delivered said bond No. 66 to the Fidelity National Bank, and urges that the record is clear as to who actually printed the bond and as to who actually authorized the signatures thereon.

The record shows the defendant in this case, who has been known at different places by different names, was a partner of C. J. Collingsworth & Co., sent his employees to the bank to close the loan. Defendant signed the notes, which was the final consummation of the loan to the bank, and authorized the bonds being put up as collateral. In his argument the fundamental questions are argued by him, that the defendant in a criminal action is presumed to be innocent until the contrary is proved beyond a reasonable doubt by competent testimony. In case of reasonable doubt as to whether his guilt is satisfactorily shown he is entitled to be acquitted. Citing in support of his contention many authorities.

It is not denied by the state that it must prove each and every material allegation contained in the information against the defendant, and if it fails to prove each and every material allegation therein contained the defendant is entitled to be acquitted. It is admitted by the state that the defendant is presumed to be innocent until his guilt is established beyond a reasonable doubt, and if the state fails to do this the defendant should be acquitted. The courts are uniform on this question, and it is needless to cite the authorities relied upon by the defendant in his argument and brief.

The question for this court to decide is the question, Is the proof sufficient to establish the allegations in the information and show the guilt of the defendant beyond a reasonable doubt? In considering this question it is the duty of this court to consider all the facts and circumstances surrounding the transaction. It is clearly shown by the evidence that prior to his forming a partnership with C. J. Collingsworth, under the style and name of Collingsworth & Co., that defendant in different places had gone by the name of James Warren and James Gordon. When the office was opened in Oklahoma City the defendant and partner was in charge of the office; that C. J. Collingsworth was to receive $100 per month for salary and 10 per cent. of the profits, if any profits were made.

After the business had been conducted for some time, Morris Head, an employee of the office of Collingsworth & Co., discovered a number of these Omaha improvement bonds on the defendant's desk; later on the defendant told him to check them and put them in a box; some time thereafter the defendant advised Mr. Head he had negotiated a loan; that he had sent the bonds out to ascertain their market value, and they had been returned with the information as to what the market value of the said bonds was.

The defendant's own testimony clearly shows that there was something in the transaction that was not right, which he did not desire to disclose. When questioned as to the bonds, or how he came into possession of them, he said he had gotten them from a man by the name of Comstamp or Constant; later he denied he made that statement and said he got them from O'Donnell, who was in the Shawnee office of Collingsworth & Co. The receiver for Collingsworth & Co., of Oklahoma City, Okla., testi-

fied that he failed to find any record in the office showing where the forged bonds came from, or from what source they were received.

Every circumstance connected with the transaction clearly shows that the defendant in this case in some way received these bonds, and that his effort to disclose the source from which he received them shows they were not genuine but were forged. Business men do not receive $10,000 in securities without having a record showing from whom received, and the purchase price, if purchased; if not purchased, if they were received as collateral, the amount the bonds as collateral secured.

Section 3062, O. S. 1931 (22 Okla. St. Ann. § 834), provides:

"On the trial of an indictment or information, questions of law are to be decided by the court, and the questions of fact are to be decided by the jury; and, although the jury have the power to find a general verdict, which includes questions of law as well as of fact, they are bound, nevertheless, to receive the law which is laid down as such by the court."

The question of the sufficiency of the evidence has been before this court and considered in many cases, and this court has universally held:

"Where there is evidence from which a jury may reasonably and logically find the guilt of an accused, the weight and credibility of such evidence is for the jury, who see and observe the witnesses, and this court will not substitute its judgment in such case for that of the jury." Parnell v. State, 39 Okla. Cr. 361, 265 Pac. 660.

"Conflicting issues of fact are for the sole determination of the jury." Adams v. State, 54 Okla. Cr. 363, 21 Pac. (2d) 1075; Tillery v. State, 23 Okla. Cr. 226, 214 Pac. 198; Taylor v. State, 21 Okla. Cr. 351, 207 Pac. 746;

Pickett v. State, 35 Okla. Cr. 60, 248 Pac. 352; Humberd
v. State, 56 Okla. Cr. 23, 32 Pac. (2d) 954; Coats v. State,
56 Okla. Cr. 26, 32 Pac. (2d) 955; Kisselburg v. State,
56 Okla. Cr. 46, 33 Pac. (2d) 236; Clemmer v. State, 56
Okla. Cr. 354, 40 Pac. (2d) 37; Choate v. State, 37 Okla.
Cr. 314, 258 Pac. 360; Campbell v. State, 23 Okla. Cr. 250,
214 Pac. 738; Robinson et al. v. State, 60 Okla. Cr. 443,
65 Pac. (2d) 212; and Charles J. Liddell v. State, 61
Okla. Cr. 306, 68 Pac. (2d) 432.

There is very little dispute in the record as to the
evidence. The only material difference being as to where
the defendant in this case came into possession of the
forged bonds. That he had possession of them is un-
denied, and that he had placed them as collateral to se-
cure a note signed by him is undenied. The evidence is
amply sufficient to sustain the judgment.

The defendant also discusses the question of the court
permitting amendments to the information, and alleging
that the action of the court in permitting the county at-
torney to amend the information when it did was an
error sufficient to reverse the case. In Dobbins v. State,
40 Okla. Cr. 334, 268 Pac. 1116, 1117, this court held:

"An information may be amended after plea by or-
der of court, where same can be done without material
prejudice to the rights of the defendant."

In Anthony v. State, 55 Okla. Cr. 260, 28 Pac. (2d)
1115, in the first paragraph of the syllabus, the court
stated:

"It is not error to permit the county attorney to
amend the information in matter of form or substance,
where the same can be done without material injury to
the defendant even though the trial may have begun."

The amendment to the information complained of by
the defendant, which the court permitted the county at-

torney to make, changed the figures $833.68 to $1,000, and the date the alleged money was secured from May 28, 1935, to June 1, 1935. This amendment did not change the facts or require the defendant to offer other or greater proof than he would have to offer if the amount alleged to have been secured had not been changed, and the date of the month remained as in the original information. The rights of the defendant were not prejudiced by the trial court in granting the county attorney permission to amend the information.

The other errors assigned by the defendant have been carefully considered in connection with the testimony in the record and the instructions of the court. The court correctly advised the jury as to the law applicable to the facts. The evidence is sufficient to sustain the judgment and sentence. We fail to find any error in the record warranting this court in reversing the case and granting a new trial.

The judgment is affirmed.

DOYLE and BAREFOOT, JJ., concur.