## TOM TEEL v. STATE.

No. A-8216.   March 12, 1932.
(11 Pac. [2d] 197.)

John P. Crawford and I. M. King, for plaintiff in error.

The Attorney General, for the State.

CHAPPELL, J.   Plaintiff in error, hereinafter called defendant, was convicted in the district court of Pontotoc county of the crime of manslaughter in the first degree, and his punishment fixed by the jury at imprison-

ment in the state penitentiary for a period of four years, with a recommendation that the sentence be suspended.

The evidence of the state was that Luke McNair, the deceased, Bob Reeves, Jennings Burris, Houston Munsey, Bob Walker, and Tom Cook were drinking and gambling near defendant's home on the day of the homicide; that as the others left, defendant and deceased continued to gamble; that defendant struck deceased twice over the head with a gun and shot him four times; one bullet went into the upper right arm and ranged directly straight through towards the spine; one bullet went into the back of the head, two inches behind the upper tip of the left ear, and came out in the top of the head; one glanced the end of the nose, went through the upper lip to the right and lodged in the lower jaw; one went in the left leg from the outside, just above the knee, and came out below the knee on the inside; that the wound in the back of the head was fatal; that the pistol used was a .32-caliber automatic; that shells thrown out by the automatic ejector went on two sides of where the body lay; that the body lay in a ditch and the shells were found on the bank, a couple of feet above and ten or fifteen feet distant from the place where the body lay; that defendant went to his house, about 50 yards away, and laid the gun on the mantel; that when the officers came, defendant told them he had killed him a man; that no weapon was found on or about the deceased.

Defendant, testifying for himself, claimed self-defense.

Defendant first contends that the evidence is insufficient to support the verdict of the jury.

Defendant was the only eyewitness to the killing. The physical facts contradict defendant's claim of self-defense. The position of the body in the ditch, the place

where defendant stood when he did the shooting, the wounds in the back of the head, front of the face, side of the body, and leg, all show that they were inflicted from different positions; the location of the shells thrown from the pistol ejected show that defendant shot deceased from at least two directions; the hat with the hole in the brim showed that a shot was fired into deceased's head from a position above him and at an angle. When all of the facts and circumstances are considered together, they are sufficient to support a verdict of manslaughter in the first degree.

It is next contended that the court erred in permitting the county attorney to cross-examine character witnesses offered by defendant for the purpose of showing him to be a peaceable and law-abiding citizen. The particular complaint is that the court permitted the county attorney to ask character witnesses on cross-examination if they had heard of specific acts of anger, disorderly conduct, and criminal offenses, and, if, having heard of those things, they still believed defendant's reputation as a peaceable, law-abiding citizen to be good.

In Russell v. State, 17 Okla. Cr. 164, 194 Pac. 242, this court said:

"A witness to good character may be asked on cross-examination whether or not he has heard rumors of particular and specific charges of the commission of acts inconsistent with the character he is called on to prove, not for the purpose of establishing the truth of such facts or charges, but to test the credibility of the witness and to determine the weight to be given his evidence. The extent of such cross-examination is a matter resting in the sound discretion of the trial court, and a judgment of conviction will not be reversed because the trial court permitted such a cross-examination unless a clear abuse of such discretion is shown."

In Carroll v. State, 24 Okla. Cr. 26, 215 Pac. 797, this court said:

"On cross-examination of witnesses as to defendant's character and reputation as a peaceable and law-abiding citizen, it is proper to inquire as to knowledge of alleged acts of violence committed by the defendant at various times prior to the time of the killing on others than the deceased."

Defendant also complains that the court refused to permit him to show that deceased had a gun on the day prior to the homicide.

The trial court permitted defendant wide latitude in establishing the quarrelsome, violent disposition of deceased and the fact that he went around armed. While evidence that deceased was armed on the day before the homicide was admissible, yet this evidence could not have changed the result of the trial, since the deceased was unarmed at the time he was killed, and the evidence of his being constantly armed and being quarrelsome and violent all being before the jury.

Defendant next complains of instruction No. 7 of the court.

The court on its own motion gave the usual instructions in a case of this character, and they were as favorable to the defendant as the facts in the case and the law required.

Defendant next contends that the court erred in receiving and pronouncing judgment on the verdict, which reads as follows:

"We, the jury drawn, impaneled and sworn in the above entitled cause, do upon our oaths find the defendant guilty of manslaughter in the first degree as charged in the information herein and assess the punishment of the

defendant at (4) years in the State Penitentiary, and that the jury recommend to the judge that the sentence be suspended."

Under this assignment, defendant contends first that it was error for the court to receive and read the verdict of the jury; that this duty should have been performed by the clerk. There is nothing in the record to support this contention of defendant.

Defendant also urges that it was error for the court to receive the verdict in the absence of his counsel.

There is nothing in the record affirmatively showing the absence of counsel. This only appears in the motion for a new trial.

In 12 Cyc. at page 534, the rule is stated:

"It is not error to receive the verdict of the jury when defendant's attorney is absent, if defendant is present and does not object."

The constitutional right of accused to have assistance of counsel may be waived, and is waived by failure to demand the presence of counsel. Baker v. State, 9 Okla. Cr. 62, 130 Pac. 820.

In 27 R. C. L. § 18, at page 846, the rule is stated:

"The verdict may be received in the presence of the prisoner, although in the absence of, and without notice to, his counsel. When it is the fact that the counsel had the privilege of being in court, if he wished, when the verdict was received, and his accidental absence at that time was not owing to any order or any action of the court, or any conduct by the counsel or parties on the other side, the judgment will not be reversed because of his absence." Sutcliffe v. State, 18 Ohio, 469, 51 Am. Dec. 459; Beaumont v. State, 1 Tex. App. 533, 28 Am. Rep. 424; Fitz-

gerald v. Clark, 17 Mont. 100, 42 Pac. 273, 30 L. R. A. 803, 52 Am. St. Rep. 665.

It is next contended that it was evidently the intention of the jury that defendant should not be imprisoned at all, since the jury recommended a suspended sentence.

In Knopp v. State, 49 Okla. Cr. 416, 295 Pac. 228, 229, this court, speaking of a verdict with a similar recommendation, said:

"If the jury had assessed a punishment greater than the minimum, the recommendation of the jury might have appealed to the trial judge, although he was not under any legal obligation to follow the same. While the verdict is informal, it is not illegal, and was sufficient to authorize the court to pronounce judgment thereon."

The evidence being sufficient to support the verdict of the jury, and the errors of law complained of being without substantial merit, the cause is affirmed.

DAVENPORT, P. J., concurs. EDWARDS, J., absent; not participating.