## SCOTT MORELAND v. STATE.

No. A-8930.   Dec. 13, 1935.
(52 Pac. [2d] 97.)

Hickman & Ungerman, for plaintiff in error.

Mac Q. Williamson, Atty. Gen., and Smith C. Matson, Asst. Atty. Gen., for the State.

DOYLE., J.  Plaintiff in error, Scott Moreland, and his son, Nathaniel Moreland, were jointly charged and tried in the district court of Tulsa county upon an information charging the larceny of a heifer, the property of John Palmer, on the 26th day of August, 1934.

The jury returned two verdicts; one finding the defendant Nathaniel Moreland not guilty, the other finding the defendant Scott Moreland guilty of the crime of larceny of a domestic animal and fixing his punishment at confinement in the state penitentiary for the term of five years.

Motion for a new trial was duly filed, presented, and overruled.  From the judgment entered in conformity with the verdict on December 19, 1934, he appeals.

The assignment of error strenuously urged is that the verdict is contrary to the evidence and contrary to law.

It is also urged that the court erred in denying a new trial on the ground of newly discovered evidence.

It appears the defendants were poor and unable to employ an attorney in making their defense, and counsel was assigned them by the trial court; other counsel, however, appear for plaintiff in error in this court.  It appears that the defendants lived on a farm about eleven miles east of the city of Tulsa.  John Palmer, living in

the same neighborhood, was the owner of a two year old heifer. On Sunday night, August 26th, about 9:30 o'clock, Mr. Palmer heard a shot fired from the direction of his pasture; the next morning he found his heifer was gone. He called the sheriff's office, and Deputy Sheriffs McDonald and Thomas went out there. They testified that in the pasture they found blood and tracks which they followed partly over plowed ground to plaintiff in error's house. His wife was cooking freshly butchered meat. They found the rest of the meat under a bed covered by a sheet. On further search following tracks from the house, they found the bones and head and hide of this heifer.

Forrest Kramer, deputy sheriff, testified that he arrested the two defendants the next afternoon; that Nathaniel, the boy, said that when he came home from church that night his father told him to get an ax and a tub, and he helped his father to carry the meat; that they hauled the bones off about a mile and a half towards Catoosa.

At the close of the evidence in chief, a demurrer thereto was interposed on the ground that it was insufficient to warrant a conviction.

The defendant Scott Moreland testified: That on July 10th, this year, John Palmer came to his place and sold him a heifer calf for $5. That Mr. and Mrs. E. Z. Collins from Sand Springs were visiting there and witnessed his mark to the bill of sale as follows:

"[Exhibit I] Tulsa, Okla., July 10th, 34.

"In consideration of five dollars in hand paid, I, John Palmer, does sell to T. S. Moreland one hiffier calf. the above property is mine and free from all indebtedness.

"X John Palmer

"Witnesses E. Z. Collins

"Viola Collins."

That he signed Mr. Palmer's name and Palmer made his mark. That he bought it to butcher and can for the winter, and, having no place to keep it, Palmer agreed to pasture it.

That Sunday night, when the boys came home from church, he, with Nathaniel, went over there, killed the calf and skinned it, then boned the meat so it would cool off. That the next morning he put the bones in his car and hauled them away and dumped them out near the highway. That when he went to get the calf Mr. Palmer said he would have to pay $2.50 pasture bill. That he butchered in the night to avoid the flies.

On cross-examination he stated that he had been twice convicted of felony.

Mr. and Mrs. E. Z. Collins identified their signatures as witnesses to John Palmer's mark on the Instrument Exhibit I, and each testified they were present when Mr. Moreland bought the calf and gave some money to Mr. Palmer.

Fred Gochenour testified that he was present as driver for Mr. Collins and his wife and saw this defendant write the bill of sale and hand some money to John Palmer.

Cross-examination showed he had been convicted of a felony.

Nathaniel Moreland, codefendant, testified that when he came home from church about 11 o'clock his father told him he had killed a calf and wanted him to help skin it. They went over in the pasture, skinned the calf, cut it up,

and brought it home, and later dumped the bones out by a culvert on the highway. That he knew nothing about the buying of this heifer calf. On cross-examination he stated that he had served time twice in the reform school at Pauls Valley.

C. S. Payne testified that John Palmer borrowed $25 from him in May of this year, agreeing to give a mortgage on a cow and a calf, and later said that the calf belonged to his boy Bob and he could not give the mortgage. On cross-examination he stated that he did not have any use for Mr. Palmer.

In rebuttal John Palmer testified that he could not read or write; handed Exhibit I, he stated that he had never seen it before and did not make the cross-mark there; that he was not at the Moreland place in July of this year, was never there when two men and a lady were present; that he did not know Mr. and Mrs. Collins or Fred Gochenour; that he did not sell his heifer to Scott Moreland, nor did he receive $5 from him.

It is argued by counsel for the defendant that his testimony and that of the witnesses testifying in his behalf, in support of the defense made and explanatory of the incriminating circumstances, is contradicted only by the testimony of the prosecuting witness, and for this reason they assume that the jury should have believed their testimony. The credibility of the testimony of the defendant and the witnesses testifying in his behalf is the exclusive province of the jury to determine, and, although such testimony may be uncontradicted and not directly impeached when there are facts and circumstances admitted and proven tending to lessen the probability that such testimony is true, the jury may give it such weight as they deem proper, even to the extent of wholly disre-

garding the same. Wainscott v. State, 8 Okla. Cr. 590, 129 Pac. 655.

The rule as stated in Cyc. is as follows:

"The jury are not bound to believe testimony because it is uncontradicted and not directly impeached. The jury may consider the inherent improbabilities of the statements of the witness, and they may be of such a character as to justify them in disregarding his testimony, although uncontradicted by direct testimony. He may be contradicted by the facts that he states as completely as by adverse testimony, and there may be so many omissions and improbabilities in his evidence as to discredit his whole story." 12 Cyc. 486.

The only other contention made by counsel for the defendant is that the trial court erred in not granting a new trial on the ground of newly discovered evidence. The trial court in overruling the motion for a new trial stated in substance that the alleged new evidence was cumulative and not such as is likely to change the result.

It is well settled that the granting of a new trial on newly discovered testimony is largely within the discretion of the trial court, and is not to be exercised except when there is reasonable probability that, if the evidence had been introduced, a different result would have been reached, and that courts will not ordinarily grant new trials upon the ground of newly discovered evidence where the evidence sought to be introduced is cumulative or for mere purpose of impeachment. Howey v. State, 9 Okla. Cr. 453, 132 Pac. 499.

Upon a careful review of the entire record, we are convinced that no sufficient reason exists for a reversal of the judgment. Finally it is argued on behalf of the defendant that the punishment assessed by the jury is ex-

cessive. Under section 3204, St. 1931, this court in the furtherance of justice may modify any judgment appealed from by reducing the sentence.

In view of certain disclosures in the record, we are persuaded that the punishment imposed is excessive, and that this is a case where substantial justice requires that the judgment should be modified.

The sentence pronounced by the court below will therefore be modified and the term of imprisonment fixed at two years; as thus modified, the judgment and sentence of the district court of Tulsa county will be, and is, affirmed.

DAVENPORT, P. J., and EDWARDS, J., concur.