## WILLIAMS v. STATE.

No. A-11219.   July 12, 1950.

(220 P. 2d 836.)

72

Steele & Boatman, Okmulgee, for plaintiff in error.

Mac Q. Williamson, Atty. Gen., and Owen J. Watts, Asst. Atty. Gen., for defendant in error.

BRETT, J. The defendant below, Troy Williams, was charged, tried and convicted by a jury in the superior court of Okmulgee county, Oklahoma, of the crime of first degree manslaughter.

In the information it was alleged in substance that on the night of December 26, 1947, defendant, at a point approximately two miles north of Beggs, Oklahoma, while under the influence of intoxicating liquor and driving a Chevrolet truck, feloniously drove the same into the body of Lovell Spegal, and killed him. In the verdict the jury fixed defendant's punishment at four years in the penitentiary, "with recommendation that sentence be suspended". The court thereafter sentenced defendant to four years in the penitentiary.

The evidence of both the state and the defendant substantially reveals that the defendant, Troy Williams, was in the floor sweep business in Okmulgee, Oklahoma. His territory extended from Okmulgee to Tulsa and Sapulpa and back. On the day in question, the defendant being without a driver's license (the same having been revoked by the Commissioner of Public Safety), hired one Billy

Ball to drive for him. It appears that on December 26, 1947, they left Okmulgee for points as hereinbefore named. In making the route they stopped at numerous beer parlors and drank beer numerous times during the day. About dark they were still in Sapulpa, at a beer joint, where Williams and Ball were approached by a woman, one Lorraine King, who was having some trouble in getting her car keys from two Indians, apparently slightly intoxicated. They interceded and helped her retrieve the car keys. Ball then got in the car with Lorraine King and searched several theaters and places in and around Sapulpa in an effort to locate the woman's brother, but without success. Ball returned and informed Williams, if it was all right with him, he was going to drive the King woman in her car to Mounds where her father and mother lived and that he would meet him there. Henceforth, the evidence of the state and the defendant differs. Ball and the King woman say that they stopped in Mounds at a pool hall and beer joint, the agreed place of meeting, and left word that they would proceed on to Beggs in her car and meet Williams there, at the Highway cafe. This they testified they did, and said they later met Williams in Beggs. There Ball took over the truck and drove, accompanied by Williams, to Okmulgee, and according to Ball, the King woman followed in her car. Ball testified on the way to Okmulgee Williams told him when he got into the truck at Beggs that he, Williams, hit a man and said, "if you will look at the side of my truck, you will see". The state's case shows they drove on up to Okmulgee followed by Lorraine King. The evidence of the state is clearly to the effect that Williams was drunk.

To the contrary, the defendant's evidence was that he met Ball and the King woman at Mounds, as original-

ly agreed, and that Ball took over the truck wheel and drove to Beggs and later to Okmulgee, and he further testified that "he just kinda laid back and relaxed" and that after Ball pulled around another car a short distance from Beggs he "felt a slight bump". He said he asked if "we hit anything" and Ball replied "it might have been a bird that flew into the truck sideboards". He further stated that they did not stop in Beggs and that he did not know the King woman was following him, that they drove to Okmulgee and parked in front of the post office.

The state further offered expert evidence of F. B. I. agents tending to clearly show the identity of Williams' red truck as the one that killed Spegal. It is thus apparent that the principal issue involved herein is that of the identity of the driver of the truck, Williams or Ball, at the time of the fatality. This statement of the facts is sufficient to resolve the issues herein involved.

The defendant's first proposition is dual: First, he contends that the court erred in making certain remarks to the jury and commenting on the case and the evidence in the presence of the jury. This contention is predicated upon the following portion of the record:

"Q. You say you drank five. Mr. Boatman: What say? The Court: If you are going into all this, I think we had better recess. Mr. Boatman: Yes, I have several more. The Court: We are coming back after dinner. You will be in charge of your sworn bailiff. Don't discuss the case with any one . Return at 1:30"

No objection or exception was taken to these remarks, and after the noon recess defense counsel never again alluded to this line of cross-examination. It is apparent that the court's remarks cannot in the slightest be regarded as comment on the evidence. It is nothing more

than informative as the language employed indicates. In effect, it informed counsel that if you are not going to finish with this witness, and you are going into all this now, we will take a noon recess. This contention is wholly without merit. Secondly, he contends that the court erred in unduly limiting the cross-examination of the state's witness Lorraine King, over the objections and exceptions of the defendant. This proposition is predicated upon the following portion of the record:

"Q. What was the purpose of your going on to Beggs? A. I guess I wanted to. Q. But you understood that Bill was going to drive you to Mounds. A. Yes, sir. Q. What discussion did you have, or what did you say about you two going on to Beggs? Mr. Hays: If the court please, I don't believe that is competent. The Court: I don't see where it has anything to do with the case. Mr. Boatman: If your Honor please, in cross-examination, we have broad latitude. The Court: You have to stay in something to do with the case. Objection sustained. Mr. Boatman: To which we except. And we want to ascertain from this witness the purpose of her going on beyond Mounds. The Court: All right. Just a second. Mr. Boatman: I made the offer. The Court: Well— Mr. Boatman: Is it refused? The Court: It is refused. Mr. Boatman: To which we except."

In this connection the defendant contends "the most vital question in the case was who was driving the truck at the time it hit the deceased, * * * and the witness, Lorraine King, told a most unusual story * * *, and the defendant should have had a right to fully cross-examine her as to why after she had been driven to Mounds, where her father and mother lived, that she and Billy Ball drove on to Beggs, as they claim they did, * * *. We are of the opinion in denying his right to cross-examine witness Lorraine King on this vital issue the trial court deprived the defendant of a right most vital to his de-

fense". With this contention, we agree. It went to the very essence of his defense, namely that he was not driving the truck at the time of the fatality. His reasonably extensive and vigorous cross-examination of this witness, on matters sought to be inquired about, might have proved the means of bringing about an entirely different result in the case. Hence, the vitality of this right to the defendant. Moreover this was a proper matter of inquiry since it related to the evidence given by the witness on direct examination. As it was said in Fields v. State, 85 Okla. Cr. 439, 188 P. 2d 231, 236:

" 'On cross-examination of a witness, the party cross-examining should be confined to the matters concerning which the witness has been examined in chief, but this rule should be liberally construed so as to permit any question to be asked on cross-examination which reasonably tends to explain, contradict, or discredit any testimony given by the witness in chief or to test his accuracy, memory, skill, veracity, character, or credibility.' " Harrold v. Territory, 18 Okla. 395, 89 P. 202, 10 L.R.A., N.S., 604, 11 Ann. Cas. 818.

In Henry v. State, 6 Okla. Cr. 430, 119 P. 278, in syllabus 1 it was said:

"On cross-examination a witness may be asked any question the answer to which would tend to test his means of knowledge, his intelligence, the reliability of his memory, or his bias, prejudice, or interest in the case."

In the body of the opinion, the court said:

"The reason why the Constitution of the state provides that in all criminal cases the accused must be confronted by the witnesses who testify against him is that the defendant may exercise the right of cross-examination. The right of confrontation is given for the purpose of enabling a defendant to test the means of knowledge of a witness, his intelligence, the reliability of his memory, and his bias, prejudice, or interest in the case.

The right of proper cross-examination is everywhere recognized as one of the most important and valuable rights possessed by a defendant and is just as important to him as the right to examine a witness against him in chief is to the state. Necessarily the object of cross-examination is to break or weaken the force of the testimony given by the witness on his examination. From this it follows that any matter which would have a tendency to lessen the credibility of a witness is a proper matter of inquiry on cross-examination. The general rule, therefore, is that anything which tends to show bias or prejudice on the part of the witness or anything which shows his friendship or enmity toward either of the parties is commonly a proper subject of inquiry; so, also, is anything which tends to show that in the circumstances in which he is placed he has a strong temptation to swear falsely. The situation of the witness in regard to the result of the trial, his interest therein, or inclination for or against either of the parties may be shown. Mr. Wigmore says that the right of cross-examination is 'beyond doubt the greatest legal engine ever invented for the discovery of the truth.' "

In Spear v. State, 7 Okla. Cr. 379, 123 P. 852, it was said:

"The right of cross-examining witnesses against a defendant is one of the most valuable rights given him by law, and it is reversible error per se to deprive a defendant of this right."

It is well that we here observe that the right of cross-examination was not denied in the case at bar, but only limited as to Lorraine King. In the body of the opinion, in the Spear case, supra, it was further said:

"It is just as important to him as the right to introduce testimony in chief is to the state. If we were to affirm this conviction we would disregard the statutes and the Constitution of the state which we are sworn to uphold and support."

The trial court's denial of the defendant's right to cross-examine the witness Lorraine King falls within the latter rule herein set forth and constitutes error.

The second proposition of the defendant is that the court erred in overruling defendant's motion for a new trial, which motion was predicated upon the ground of newly discovered evidence. In support of this contention the defendant attaches the affidavit of M. T. Kilpatrick to the effect that at the place where Spegal lost his life he saw a man answering the description of Spegal staggering on the highway. The said evidence was not known to the defendant until about the time the jury retired for deliberation, and was disclosed by Kilpatrick in a telephone conversation with Mr. Steele, of counsel, at counsel's office while Mr. Boatman, of counsel, was in the trial of this case. The defendant contends that it was error not to grant a new trial on the ground of this newly discovered evidence which would have affected the result of the trial. It is further urged in his connection that this evidence should be considered in the light of the affidavit of S. Graham Smith to the effect that the jury stood 6 to 6 most of the afternoon and only arrived at a verdict after it was suggested that the court could give a suspended sentence if recommended by the jury. This contention is without merit, first, because the evidence of M. T. Kilpatrick is cumulative, being substantially the same as that given by Frank Chambers. Hence, such cumulative evidence standing alone is not sufficient to warrant the granting of a new trial. In Moreland v. State, 58 Okla. Cr. 292, 52 P. 2d 97, this court said:

"A new trial should not be granted upon the ground of newly discovered evidence where the same is merely cumulative or is for the purpose of impeachment. It

must appear that, if the newly discovered evidence had been introduced on the trial, there is a reasonable probability that a different result would have been reached."

To the same effect is McKissack v. State, 61 Okla. Cr. 65, 65 P. 2d 1239; Hiatt v. State, 67 Okla. Cr. 372, 94 P. 2d 262; Cummings v. State, 57 Okla. Cr. 428, 48 P. 2d 879. Moreover, this court has repeatedly held that such motions are addressed to the trial court's discretion and its ruling thereon will not be disturbed on appeal except for an abuse of discretion; the presumption being that the discretion was properly exercised. Parkey v. State, 59 Okla. Cr. 45, 56 P. 2d 144; Clemmer v. State, 56 Okla. Cr. 354, 40 P. 2d 37. There is not sufficient showing to overcome the presumption in favor of the court's exercise of sound discretion. Except for the affidavit of S. Graham Smith there would not have been the slightest basis for the claim of abuse of discretion. We cannot consider the affidavit of S. Graham Smith for any purpose since it is an attempt by the juror to impeach the jury's verdict. In this connection this court has said in Neighbors v. State, 56 Okla. Cr. 108, 34 P. 2d 290:

"Unless required by statute, a verdict cannot be impeached by the affidavits or testimony of jurors, showing misconduct on their part in arriving at the verdict."

To the same effect see Newton v. State, 61 Okla. Cr. 237, 71 P. 2d 122; Smith v. State, 59 Okla. Cr. 111, 56 P. 2d 923. In Wheeler v. State, 66 Okla. Cr. 127, 90 P. 2d 49, this court said to permit the impeachment of a jury's verdict by the affidavit, deposition or sworn testimony of a juror was now universally held to be contrary to public policy. Hence, the affidavit of S. Graham Smith is of no value in this case for the purpose for which

it was tendered, and it is apparent that this contention is therefore without merit.

The third contention is as follows, "the court erred in receiving the verdict of the jury in the absence of counsel for the defendant". This contention has been repeatedly decided adversely to the defendant's contention herein. In Teel v. State, 53 Okla. Cr. 200, 11 P. 2d 197, in syllabus 2 this court said:

"It is not reversible error in a felony case for the trial court to receive the verdict of the jury in the absence of counsel, where the defendant is personally present."

In the body of the opinion, 53 Okla. Cr. at page 204, 11 P. 2d at page 198, it was said:

"There is nothing in the record affirmatively showing the absence of counsel. This only appears in the motion for a new trial.

"In 12 Cyc. at page 534, the rule is stated:

" 'It is not error to receive the verdict of the jury when defendant's attorney is absent, if defendant is present and does not object.'

"The constitutional right of accused to have assistance of counsel may be waived, and is waived by failure to demand the presence of counsel. Baker v. State, 9 Okla. Cr. 62, 130 P. 820.

"In 27 R.C.L. § 18, at page 846, the rule is stated:

" 'The verdict may be received in the presence of the prisoner, although in the absence of, and without notice to, his counsel. When it is the fact that the counsel had the privilege of being in court, if he wished, when the verdict was received, and his accidental absence at that time was not owing to any order or any action of the court, or any conduct by the counsel or parties on the other side, the judgment will not be reversed because of his ab-

sence.' Sutcliffe v. State, 18 Ohio 469, 51 Am. Dec. 459; Beaumont v. State, 1 Tex. App. 533, 28 Am. Rep. 424; Fitzgerald v. Clark, 17 Mont. 100, 42 P. 273, 30 L.R.A. 803, 52 Am. St. Rep. 665."

The record in the case at bar does not affirmatively show the absence of counsel. His absence appears for the first time in the motion for a new trial. Better practice dictates the defendant should be advised of his right to have counsel present where such would not entail too long delay in the proceedings. Then if the defendant cared to do so he could waive the presence of counsel. Counsel's absence in this case was not necessary for the preservation of error, since error appears on the face of the record; but conditions might arise where counsel's presence would be vital to the preservation of substantial rights. Here the proceedings would not have been unduly delayed, since defendant's counsel had gone to the hospital on an emergency and his presence or that of his partner was only a question of minutes. This contention is not altogether without merit, though in this case not sufficient to constitute reversible error.

The fourth proposition of the defendant is that the court erred in accepting the verdict in the form in which it was received, in that it was void, as being indefinite and uncertain and he should have advised the jury that the recommendation for a suspended sentence could not be executed since it was contrary to law, and that the court should have given them an opportunity to return a verdict according to law which the trial court did not do. The verdict was in conformity with the law except for the clause "with the recommendation that the said sentence be suspended". The pertinent part of the statutes controlling in this regard is Title 22, § 991, O.S.A. 1941, as follows:

"Whenever any person shall be convicted in any court of record for any crime other than murder, manslaughter or arson, the Judge trying said cause may, after sentence, suspend said judgment and sentence, * * *."

It clearly appears from the quoted language contained in the foregoing statute that the court was without authority in this case of manslaughter to suspend the sentence since the court itself was prohibited by statute from suspending the sentence and that the jury acted contrary to law and beyond the court's instruction in entertaining the proposition of a suspended sentence. Evidently, some of the jurors were not voting for a guilty verdict, and the question as to whether the court could give a suspended sentence was raised which no doubt influenced the jury in returning its verdict of guilty with the recommendation. Of course, defendant's counsel should have objected to the form of the verdict. Pruitt v. State, 17 Okla. Cr. 434, 190 P. 894. And if it is possible to arrive at the intent and purpose of the jury, the verdict should be upheld. Fannin v. State, 65 Okla. Cr. 444, 88 P. 2d 671. But we cannot go so far as to sustain the jury's verdict in expressing its unlawful intent where the result might have been favorable to the defendant had the jury not been laboring under the belief the court could carry out the unlawful intent as expressed in their verdict and suspend the sentence. As was said in Bowman v. State, 82 Okla. Cr. 199, 167 P. 2d 663, 668:

"We have given particular attention to this question because of our desire to never approve a judgment of conviction that is obtained because of prejudice created by the state against accused *or where the verdict is the result of confusion in the juror's minds as to the law in the case caused by the giving of contradictory instructions or by oral statements by the trial court.*"

In this connection the jury was not confused by any written or oral instruction given by the court but certainly they were just as confused as to the law applicable in the case as though the court had erroneously instructed them. Certainly the effect was just as prejudicial to the defendant's rights as though they had been misled by the court. A verdict resulting from confusion as to the law of the case, where it is clear a different result favorable to the accused might have resulted, in the absence of confusion, should not be permitted to stand where the defendant's rights have been materially affected as apparently they were herein. It is altogether possible that a different result might have been reached if the jury had not been confused by its consideration of the proposition of a suspended sentence which under the law they had no right to consider. The Attorney General relies on cases where the court is permitted to suspend a sentence the jury's recommendation has been held to be mere surplusage, since it is not a part of the verdict, and is a matter addressed to the sound discretion of the trial judge as to whether he should follow the recommendation of the jury. Our court, however, has said in Presnell v. State, 71 Okla. Cr. 162, 109 P. 2d 834, that great weight should be attached to the jury's recommendation by the trial court in a proper case. Coe v. State, 86 Okla. Cr. 297, 192 P. 2d 291, 292, wherein this court said:

"There have been many cases before this court in which the jury by its verdict has fixed the penalty to be imposed upon the accused but at the same time there was included in the verdict a recommendation by the jury that the sentence be suspended during good behavior. In those cases the recommendation of the jury has been treated as surplusage and not a part of the verdict as such. Estes v. State, 35 Okla. Cr. 335, 250 P. 809; Cole v. State, 70 Okla. Cr. 109, 104 P. 2d 981; Fannin v. State, 65 Okla. Cr. 444, 88 P. 2d 671; Knopp v. State, 49 Okla.

Cr. 416, 295 P. 228; Teel v. State, 53 Okla. Cr. 200, 11 P. 2d 197; Presnell v. State, 71 Okla. Cr. 162, 109 P. 2d 834.

"In each of the above cases this Court stated that the verdict returned by the jury was improper but not prejudicial to the defendant and therefore not reversible error."

These cases, however, are not applicable to a case involving the provisions of Title 22, § 991, O.S.A. 1941, prohibiting a suspended sentence in murder, manslaughter and arson cases. Under the circumstances herein involved it was the court's duty to follow the provisions of Title 22, § 919, O.S.A. 1941, as follows:

"If the jury render a verdict not in form, the court may, with proper instructions as to the law, direct them to reconsider it, and it cannot be recorded until it be rendered in some form from which it can be clearly understood what is the intent of the jury." Coe v. State, supra.

Obviously, had the provisions of § 919, Title 22, O.S.A. 1941, been followed, the jury's intent might have been expressed in clear and unambiguous terms of the law, and it was error for the trial court not so to do because of the ambiguity as to the jury's intent as expressed in their verdict. As was said in Coe v. State, supra:

"This court has held that the verdict must be certain, positive, and free from all ambiguity. It must convey on its face a definite and precise meaning, and should show just what the jury intended. An obscurity which renders it at all doubtful will be fatal to it. Smith v. State, [83 Okla. Cr. 392], 177 P. 2d 523. See also State v. Pierce, 136 Mo. 34, 37 S.W. 815; Rea v. State, 6 Okla. Cr. 366, 118 P. 815; Wingfield v. State, 38 Okla. Cr. 435, 263 P. 158; George et al. v. State, 28 Okla. Cr. 388, 231 P. 318; Campbell v. State, 14 Okla. Cr. 319, 170 P. 915."

Such is the situation in the case at bar relative to the jury's verdict. There is no way to determine the jury's intent after the exclusion of their recommendation for a suspended sentence. The verdict is therefore void for ambiguity.

In retrospect, the errors herein discussed, any one of them standing alone, probably would not be sufficient to warrant reversal of this case, but when all of them are considered together, we are led to conclude that the defendant did not have that measure of fair trial to which the law entitles him. For all of the above and foregoing reasons, this case is accordingly reversed and remanded for a new trial.

JONES, P. J., and POWELL, J., concur.