Johnnie Joe WELLS, Appellant,

v.

The STATE of Oklahoma, Appellee.

No. F–76–608.

Court of Criminal Appeals of Oklahoma.

Jan. 4, 1977.

---

15. *Foster v. Knutson*, 84 Wash.2d 538, 527 P.2d 1108, 1114 (1974). 12A O.S.1971 § 9–507(2).

446

Byron Ed Williams, Oklahoma City, Court Appointed, for appellant.

Larry Derryberry, Atty. Gen., Robert L. McDonald, Asst. Atty. Gen., Alan Foster, Legal Intern, for appellee.

## OPINION

BUSSEY, Judge:

Appellant, Johnnie Joe Wells, hereinafter referred to as defendant, was charged in the District Court, Rogers County, Case No. CRF–75–81, for the offense of Robbery With Firearms in violation of 21 O.S.1971, § 801. The defendant was represented by counsel and tried before a jury, and convicted of the aforementioned crime. His punishment was fixed at twenty (20) years' imprisonment. From said judgment and sentence a timely appeal has been perfected to this Court.

The State's first witness, Rocky Joe Rothrock, testified that he had been convicted of Robbery With Firearms arising out of the same occurrence for which the defendant herein was tried. He testified that he had previously been convicted of two counts of Armed Robbery, Car Theft, Burglary, Grand Larceny, Possession of Firearms, and Perjury. Mr. Rothrock, Allen and Donnie Clark, the defendant herein and his girl friend, along with several other individuals had been at a bar in Tulsa until approxi-

mately 2:00 a. m. on the day of the robbery, April 22, 1975. Upon leaving the bar, Mr. Rothrock accompanied the defendant and others to a house on South Trenton in Tulsa, in which they all lived. At approximately 4:00 a. m., Mr. Rothrock, Allen Clark and Donnie Clark, left that house to "go find a car," leaving the defendant and his girl friend, Miss McCuistion, and others at that house. After finding a car, Mr. Rothrock and the Clarks returned to the same bar they had visited earlier, then approximately thirty minutes later, at about 5:00 a. m., Mr. Rothrock and Donnie Clark proceeded to Catoosa. After arriving in Catoosa, they went to the Major Oil Company service station at approximately 6:00 or 6:15 a. m. Mr. Rothrock entered the station, held up the attendant at gun point, then went back to the automobile that was waiting for him. He testified that the driver of that car knew the purpose for which they had gone to the service station. After leaving the station, they proceeded "back to Tulsa," in the automobile, later abandoning that car and continuing on foot. When Mr. Rothrock and the driver abandoned the car, Mr. Rothrock "stashed the gun under some bushes." They arrived back in Tulsa, approximately 14 or 15 hours later. On cross-examination, Mr. Rothrock stated that Donnie Clark was the driver of the get-a-way car in the robbery and not the defendant, Mr. Wells.

The State's next witness was R. H. Wilson, the attendant on duty at Major Oil Co. service station at the time the robbery took place. He testified that at approximately 6:15 a. m., on April 22, 1975, a man came into the station, threatened him with a gun, and took $661.00. Mr. Wilson stated he saw no one else with the man who took the money. On cross-examination Mr. Wilson stated that he had known the defendant for approximately one year prior to the date of the robbery. He stated that the defendant had lived in a trailer park next to the station and had traded at the station on numerous occasions.

The State next called Jack Powell, Police Officer of the City of Tulsa. Officer Pow-

ell testified that he visited with the defendant in the Tulsa County Jail on May 6, 1975. The witness stated that Sergeant Larry Johnson, investigator J. B. Hamby, Officer Ron Barnes from Catoosa, and at one point Rocky Rothrock were with the defendant and him during this questioning. After the defendant was advised of his rights, Mr. Powell told the defendant that Mr. Rothrock had admitted the Armed Robbery in Catoosa and implicated the defendant in the robbery as the person who drove the car. After explaining this to the defendant, Officer Powell stated that the defendant then said he was in fact in the car, the car was stolen, and that Rocky had gone in and pulled the robbery. Officer Powell also testified that the defendant told him he had driven the car involved in the robbery. At that point, Mr. Rothrock was brought back into the questioning room with the defendant and the officers, and at that point Mr. Rothrock and the defendant went over the prior conversation and there was no difference in the two separate conversations. On cross-examination, Officer Powell testified that there were no deals offered to the defendant nor any signed confession by the defendant. It was a completely oral confession. But he did testify that a Sergeant Larry Johnson was making notes during the questioning.

Officer Larry Johnson was next called as a witness for the State. Officer Johnson testified to substantially the same facts as Officer Powell had previously. Officer Johnson further testified that he did recall making a few notes during the questioning of the defendant. He also stated that the defendant was never asked to sign any statement nor offered any deals.

The State next called Ron Barnes, Chief of Police, Catoosa, Oklahoma. Chief Barnes was present during the questioning of Mr. Rothrock and the defendant. His testimony was substantially the same as the two previous officers' testimony. He additionally testified that the defendant originally denied any involvement in the Major Oil Co. robbery. After the officers told the defendant that Mr. Rothrock had implicated him in the robbery as the driver of the car, the defendant did not believe them. Mr. Rothrock was then brought into the room with the defendant and after a discussion between them, the defendant advised the officers that he had driven the car in the robbery. Chief Barnes also stated that he had found the car used in the robbery and no fingerprints were found in it.

The State then rested.

The defense counsel demurred to the evidence on grounds that the State had not proven their case. The demurrer was overruled.

The defense counsel waived opening statement and called as the first witness, Grace McCuistion. Miss McCuistion testified that she lived with the defendant on South Trenton, in Tulsa, during April, 1975, along with several people. She stated that the defendant, she, Mr. Rothrock, Allen and Donnie Clark, and others were at the bar in Tulsa until approximately 2:00 or 3:00 a. m. on April 22, 1975. At that point, they all went to the house on South Trenton in a car. She did not know whose car it was because none of the people she was with had a car. She testified that after arriving at the house, Mr. Rothrock and Donnie and Allen Clark left, while the rest ate at the house and went to sleep. When she awoke that afternoon, Mr. Rothrock and the Clarks were still gone but Mr. Wells was still there asleep. She testified that the reason she remembered that particular evening so well was because the defendant had asked her to marry him that evening.

The defense then called the defendant, Johnnie Joe Wells, to testify in his own behalf. The defendant testified that he had previously been convicted of Second Degree Burglary. That Second Degree Burglary charge was in concert with the previously mentioned Rocky Joe Rothrock. He stated that he had been questioned by the officers on May 6, and that he had made no statements to them at that time. The defendant also testified that Officers Johnson and Powell told him that if he would "cop out on Rocky Rothrock," they [the officers], would have him out on the streets in two or

three hours. On cross-examination he stated he had previously lived in Catoosa for three years and his father had worked at the service station where the robbery took place. The defendant then testified to substantially the same facts pertaining to his whereabouts on the morning of April 22, as had Miss McCuistion testified to earlier. After the defendant's testimony, the defense rested and the case submitted to the jury.

The defendant's first assignment of error alleges that the trial court erred by answering a certain interrogatory put to it by the jury outside the presence of the defendant. The interrogatory was reduced to writing as follows:

"*Jury Question*

"We have reached a guilty verdict.

"*Question*: How many years does Wells have pending in McAlester now?

"*Answer*: You must set the sentence within the provisions of the law set out in the instructions without regard to any sentence in a seperate (sic) case.

"William J. Whistler, Judge."

The defendant relies on 22 O.S.1971, § 894, which provides in part:

"After the jury have retired for deliberation, if there be a disagreement between them as to any part of the testimony or if they desire to be informed on a point of law arising in the cause, they must require the officer to conduct them into court. Upon their being brought into court, the information required must be given in the presence of, or after notice to the county attorney and the defendant or his counsel, or after they have been called."

This statute pertains to communications between judge and jury, "if there be a disagreement between them as to any part of the testimony or if they desire to be informed on a point of law arising in the cause . . . ." The request of the jury in the case at bar had no bearing on testimony received by them nor on any part of the law arising from the cause. This Court views the communication complained of as totally outside the purview of 22 O.S.1971, § 894,

neither do we see any prejudice to the defendant thereby.

The defendant's second assignment of error is that certain inadmissible hearsay testimony, elicited from the State, was admitted into evidence thereby prejudicing the defendant. This testimony appears in the official transcript at page 25.

"Q. So would you go ahead and tell us the nature of these conversations so long as the defendant was present.

"A. Yes sir when we first brought Johnnie from the cell we advised him that Rocky Rothrock had been identified as pulling an armed robbery and that Rocky had admitted the armed robbery . .

"MR. CHILDERS:

Objection I believe that is hearsy. (sic)

"COURT:

You may inquire further of the defendant.

"STATE:

This is a question that you directed to the defendant.

"A. I was telling . . . Johnnie Wells what Rocky Rothrock had told me.

"COURT:

Objection overruled.

"Q. All right,

"A. That Rocky had implicated and said that Johnnie Wells had driven the car to commit an armed robbery; that they had stolen the car near Admiral and Peoria in Tulsa; that I described to him exactly what Rocky Rothrock had told me as to the fact that they had let two people out at a truck stop on Skelley By-Pass near 193rd East and that Rocky had admitted all this to us and told us how the armed robbery was done."

This testimony, elicited from an officer who interrogated the defendant, poses no hearsay problem to this Court. The statements by the officer did not constitute hearsay because they were not being offered for the truth of the matter asserted by the declarant. These statements tend merely to establish the circumstances surrounding the oral confession by the defend-

ant. More specifically, they pertain to the reasons for making the oral confession and the fact that a subsequent voluntary confession was made.

The principle, as set forth in 29 Am.Jur. 2d, *Evidence*, § 497, at page 555 clarifies this distinction as follows:

". . . The hearsay rule, . . . does not operate . . . to render inadmissible every statement repeated by witness as made by another person. It does not exclude evidence offered to prove the fact that a statement was made or a conversation was had, rather than the truth of what was said. Where the mere fact that a statement was made or a conversation was had is independently relevant, regardless of its truth or falsity, such evidence is admissible . . ."

The defendant next contends that the court erred in admitting testimony of Rocky Rothrock and the subsequent impeachment of his testimony by the State during closing argument. On direct examination Mr. Rothrock admitted a conviction for perjury. Later, during the closing arguments by the State, impeaching statements were made by the State's counsel. At no time did the defense counsel object to these matters.

Defense counsel cites 21 O.S.1971, § 505, now § 506 as controlling. It provides in part:

"No person who has been convicted of perjury, . . . shall thereafter be received as a witness, . . . in any action or proceeding between adverse parties against any person who shall object thereto, . . ."

■ It is clear from the foregoing statute that the defendant's failure to object to the testimony of Rothrock constituted a waiver and preserves nothing for review on appeal. We, therefore, hold that this assignment of error is not properly before us.

■ It is likewise clear that when the prosecutor elicited statements from Rothrock relating to his prior convictions without an objection being interposed by the defendant, such evidence was properly be-fore the jury and within the proper scope of closing argument and it was not improper for the prosecutor to comment on the evidence, particularly in light of the defendant's failure to object to such argument. See, *Sweet v. State,* 70 Okl.Cr. 443, 107 P.2d 817 (1940); *Byrnes v. State,* Okl.Cr., 451 P.2d 19 (1969); *McFay v. State,* Okl.Cr., 498 P.2d 418 (1972).

■ The defendant next asserts that the cross-examination of Grace McCuistion was calculated to arouse the prejudice and passion of the jury, thereby preventing the defendant from having a fair and impartial trial. As has been noted earlier, Miss McCuistion was an alibi witness for the defendant. She testified to her relationship with the defendant and stated he was with her at the time of the robbery. On cross-examination the State inquired into matters which tended to test her means of knowledge and intelligence, the reliability of her memory, or bias, prejudice, or interest in the case. This Court, in *Thompson v. State,* Okl.Cr., 541 P.2d 1328 (1975), held this type cross-examination to be proper and useful. In the case of *Williams v. State,* 92 Okl.Cr. 70, 220 P.2d 836, 841 (1950), we set out the rule pertaining to the scope of cross-examination as follows:

"[A]nything which tends to show bias or prejudice on the part of the witness or anything which shows his friendship or enmity toward . . . the parties is commonly a proper subject of inquiry; so, also, is anything which tends to show that in the circumstances in which he is placed he has a strong temptation to swear falsely . . ."

We approve of the scope of cross-examination as above set forth for the reason that it provides the jury with the background and interests of the witnesses and assists them in determining the weight and credibility to be given their testimony.

■ The scope of the cross-examination rests in the sound discretion of the trial court, and this Court will not reverse that decision unless a clear abuse of such discretion resulting in manifest prejudice to the accused is evident from the record. In the

case at bar, there was not such clear evidence of abuse or prejudice.

 The defendant next asserts error in that the trial court failed to submit circumstantial evidence instruction to the jury. Counsel for the defendant did not object to the instruction nor did he prepare or present to the trial court any request for instruction on this issue. It is well established in this jurisdiction that where circumstantial evidence alone is relied upon, the court should instruct on law applicable thereto by its own motion or on motion by the defendant, but where the defendant has made no request or instruction on law of circumstantial evidence, failure to instruct does not constitute reversible error. If counsel is not satisfied with instructions that are given or wishes a court give particular instructions, it is his duty to prepare and present to the court, the desired instructions. *Jones v. State*, Okl.Cr., 488 P.2d 372 (1971); *Lawson v. State*, Okl.Cr., 476 P.2d 89 (1970). We therefore find this assignment of error to be without merit.

▮ The defendant's next assignment of error is that the prosecutor made improper comments in his closing argument. These comments allegedly resulted in prejudice to the defendant. The record reveals no objection to these comments. Because the argument was not objected to at the time it was made, it is not sufficient to raise it now on appeal. *Sargent v. State*, Okl.Cr., 509 P.2d 143 (1973).

Finally, the defendant contends that numerous irregularities occurred throughout the trial which cumulatively prejudiced the rights of the defendant. The defendant relies on *Lovell v. State*, Okl.Cr., 455 P.2d 735 (1969) which stands for the proposition that when a review of the entire record reveals numerous irregularities which cumulatively tend to deny a defendant a fair trial the case should be reversed.

▮ Having found all of the defendant's assignments of error to either be without merit, or not properly preserved for review on appeal, we are of the opinion that this assignment of error is likewise without merit.

The judgment and sentence is AFFIRMED.

BRETT, P. J., and BLISS, J., concur.